JEAN L. DUFFY, APPELLANT AND CROSS-APPELLEE, V. PHYSICIANS MUTUAL INSURANCE COMPANY, APPELLEE AND CROSS-APPELLANT.

214 N. W. 2d 471

Filed January 31, 1974. No. 39122.

Dana B. Badgerow and Steven G. Seglin, for appellant.

McGrath, North, Dwyer, O'Leary & Martin, for appellee.

Heard before WHITE, C. J., BOSLAUGH, and McCOWN, JJ., and TESAR and HAMILTON, District Judges.

HAMILTON, District Judge.

This is an appeal from a District Court determination

denying relief on appellant's complaint of discrimination based upon sex, lodged against the Physician's Mutual Insurance Company. The complaint was originally filed with the Nebraska Equal Opportunity Commission pursuant to the provisions of the Nebraska Fair Employment Practice Act. §§ 48-1101 to 48-1125, R. R. S. 1943. The appellee has cross-appealed alleging jurisdictional defects in the factual sufficiency of the complaint and failure to timely file the complaint, both alleged defects having failed to comply with section 48-1118 (1) and (2), R. R. S. 1943.

On June 10, 1970, Jean Duffy filed a charge with the Nebraska Equal Opportunity Commission alleging sex discrimination practiced by Physicians Mutual Insurance Company.

A 4-day hearing was held before an Equal Opportunity Commission hearing examiner. The hearing examiner, among other things, found that "discrimination has taken place not upon the deliberate intent of the respondent company." The examiner thereupon recommended the Commission consider an award to Jean Duffy.

Both parties filed petitions for review with the Nebraska Equal Opportunity Commission and, after argument, the Commission accepted the hearing examiner's findings of discrimination, but modified the examiner's recommended award.

An appeal was taken by Physicians Mutual Insurance Company to the District Court for Douglas County, where the matter was tried on the record, pursuant to section 48-1120, R. R. S. 1943; a decree was entered vacating the Equal Opportunity Commission's order, and entering judgment in favor of Physicians Mutual Insurance Company.

The evidence presented by Jean Duffy to the hearing examiner to support her claim of sex discrimination was principally that she had performed equal work for less

pay than male employees. The evidence showed that Jean Duffy was classified as an Auditor I, under a claims audit department classification that distinguished its auditors as Auditor I and Auditor II. The stated reason for classifications by the Physicians Mutual Insurance Company was that those persons in Auditor II classification processed the more complex claims, and supervised and trained Auditor I personnel, who worked on the less complex claims, under an arrangement that teamed an Auditor I with an Auditor II. There existed a pay differential between classifications that varied, but approximated nearly $200 per month. During the course of employment Jean Duffy was assigned as an Auditor I to work with a male, classified as an Auditor II, under the team concept. It was under this arrangement that Jean Duffy allegedly performed identical work as her male counterpart for less salary.

The transcript before the District Court consisted of evidence from 24 witnesses and 61 exhibits. Without detailing all the evidence, the record generally shows that appellant prior to her assignment on a team aided other auditors, classified as Auditor II, when their work fell behind and when vacations or illness required her assistance. The record further shows that appellant performed 65 to 70 percent of the claim work assigned to her team, and that she ultimately took it upon herself, without company approval, to split the work of her team on a fifty-fifty basis. The record further indicates that a former Auditor II employee of Physicians Mutual, named Leota Kelley, testified by way of deposition, over objection, that the work performed by Miss Duffy and herself was identical.

The great share of the evidence of appellee was directed in response to the conclusions of equality drawn from the foregoing evidence. Appellee, by evidence, demonstrated that an Auditor II would have a lesser vol-

ume of work because complex claims required a greater amount of time to process, that an Auditor I, processing simple, routine perfunctory claims would have a greater volume of work, since this type claim constituted the majority of claims received. The Auditor I would process some complex claims but only under the supervision and assistance of the Auditor II assigned to the team.

In contradiction to Miss Duffy's conclusion that she was doing equal work for less pay under the fifty-fifty division of work assigned to her team, the Senior Auditor for appellee's department, testified that 65 to 75 per cent of all claims assigned to a team were simple or routine claims which were clerical in nature; and that the balance were considered as complex claims. He further testified that under the split arrangement, Miss Duffy handled a complex situation in a routine manner, which was improper, or took the problem to a Senior Auditor, rather than the Auditor II on the team, who was being paid to supervise and train the Auditor I.

Appellant relies heavily on the testimony of Leota Kelley to substantiate her complaint. The District Court found that the testimony of Mrs. Kelley was so lacking in foundation and irrelevant as to entitle it to no weight whatsoever. The evidence disclosed that Mrs. Kelley had terminated her employment some 8 months prior to Miss Duffy's termination; that she was in a different section; didn't observe her work; did at no time work in close conjunction with Miss Duffy; and that her familiarity with Miss Duffy's work was stated as "Oh, I am sure through the years that I have seen her work."

In referring to evidence before the Equal Opportunity Commission, section 48-1119, R. R. S. 1943, provides: "Such proceedings shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the State of Nebraska * * *." The testimony of Leota Kelley, admitted over proper objection, lacked foundation and was properly within the dis-

cretionary power of the District Court on review to disregard entirely. The exercise by a trial court of its discretion in ruling on admission or rejection of evidence will not be disturbed on appeal unless the trial court clearly or plainly abused its discretion.

The appellant asserts that the District Court erred, by imposing upon the appellant the burden of establishing her employer's discriminatory motive, and asserts that such a finding is immaterial to the granting of relief to appellant.

Section 48-1119 (3), R. R. S. 1943, recites: "If the commission shall determine that the respondent has intentionally engaged in or is intentionally engaging in any unlawful employment practice, it shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist * * *." The District Court in its findings stated: "It would appear that a pre-requisite to the granting of relief is, under the statute, a finding of such intent, at least in the language of the statute."

The language of section 48-1119 (3), R. R. S. 1943, is similar to the language employed in Title VII of the Civil Rights Act of 1964, 42 U. S. C. A., § 2000e-5 (g), and the legislative history indicates that our statute was designed to conform to the congressional act.

In interpreting the question of intentionally engaged, the United States Supreme Court in Griggs v. Duke Power Co., 401 U. S. 424, 91 S. Ct. 849, 28 L. Ed. 2d 158, reversed the lower court's findings requiring a finding of a discriminatory purpose on the part of the employer in using as a condition of employment a requirement that all employees have a high school education or pass a standardized intelligence test. The court said: "We do not suggest that either the District Court or the Court of Appeals erred in examining the employer's intent; but good intent or absence of discriminatory intent does not redeem employment procedures or testing mechanisms that operate as 'built-in headwinds' for minority groups

and are unrelated to measuring job capability." The court further stated: "But Congress directed the thrust of the Act to the consequences of employment practices, not simply the motivation."

The question of intent has arisen in numerous decisions in the federal courts involving discriminatory practices with regard to protected classes of employees, and the decisions have uniformly followed the reasoning of Griggs v. Duke Power Co., *supra*, that the consequences of employment practices control, rather than specific intent. This applies in those situations where the practice, procedure, system, or policy automatically creates a discriminatory result, without regard to job capabilities of the individual or class affected.

Where, however, the complaint is made that a company has discriminated by reason of any of the prohibited practices and the evidence fails to disclose a practice that automatically creates the discriminatory result, intent becomes a necessary element for complainant to prove, pursuant to section 48-1119 (3), R. R. S. 1943. To rule otherwise would completely ignore the clear statutory language and intent of the Legislature.

The evidence in the present record does not relate that there existed a practice or system that discriminated against women with regard to equal pay, nor does the appellant seriously urge such a contention, the thrust of appellant's charge is that the appellee discriminated against her on an individual basis, rather than women in general, and more specifically, that her talents and capabilities measured up to those of male employees in higher wage brackets. To sustain a charge of discrimination where there is no charge of a universal discriminatory practice or system, complainant in the record must establish that the employer intentionally engaged in acts that discriminated against complainant in violation of the statutory prohibitions.

The appellant's principal assignment of error concerns

the District Court exceeding its authority to review the order and decision of the Nebraska Equal Opportunity Commission. It is suggested that the District Court should affirm the Commission's orders and decisions where there is some competent evidence to sustain its findings, even though the evidence be weak, doubtful, or conflicting. It is further urged that the District Court should construe every controverted fact in favor of the prevailing party before the commission.

The appeal to the District Court from an order of the Equal Opportunity Commission is governed by section 48-1120 (3), R. R. S. 1943, and specifically provides the manner and scope of the appeal: "The commission's orders shall not be vacated, modified, or set aside unless: . . . (b) The findings of the commission in support of such order are unreasonable or arbitrary or are not supported by a preponderance of the evidence."

In the absence of a specific statute setting out the method and scope of appeal, the Administrative Procedure Act, sections 84-901 to 84-919, R. R. S. 1943, would apply, and the review in the District Court would be governed by the substantial evidence test urged by appellant, however, in the present case the statute specifically provides the manner and scope of appeal. The District Court was therefore required to determine whether the Commission's findings were unreasonable or arbitrary and whether the findings were supported by the preponderance of the evidence.

The District Court judgment that the finding of the Commission was clearly arbitrary, and without any foundation in the evidence, was within the statutory guidelines on review. The statute fixed the scope of appeal and the District Court was required to review the entire record, weigh the evidence, and apply the statutory guidelines with relation thereto.

The evidence recited heretofore, and the record in its entirety, indicate that the great weight of the evidence

preponderates in favor of appellee, that the wage differential of appellant and male employees was based upon lack of skill, effort, and responsibility of appellant, and not upon any discriminatory considerations regarding her sex.

The record contains abundant evidence indicating Jean Duffy's inability to get along and work harmoniously with her fellow employees. Testimony showed that frictional situations existed with fellow employees; and that she lacked the supervisory skills or ability that were necessary to make the complex decisions required of an Auditor II.

The record further indicates that the salary of Jean Duffy on June 10, 1970, in comparison to those salaries of male auditors in the Auditor I classification, exceeded four of seven, and was within $10 of two of the other three.

The employment record of Jean Duffy indicates that since terminating her employment with Mutual of Omaha, in 1957, she has worked for nine separate insurance companies; and one former employer testified she was the only employee he had fired in a 15 to 20 year period.

The burden of proof is on complainant to prove a discriminatory pay differential by reason of her sex.

In reviewing the District Court's findings on review of an Equal Opportunity Commission order, the rule that this court will not disturb the District Court's findings, unless clearly wrong and unsupported by the evidence does not apply with the same force, since the District Court had no advantage in reviewing the written record from the commission hearing, but, whereas here, the evidence supporting the District Court's findings of fact is substantial, the findings will not be disturbed.

It is unnecessary to decide the issues raised by appellee's cross-appeal since the case has been decided on its merits.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.