REQUESTED BY: Lawrence R. Myers, Executive Director, Nebraska Equal Opportunity Commission, Lincoln, Nebraska.
Does the prohibition against religious discrimination contained in section 48-1104, R.R.S. 1943, impose on employers an affirmative duty to accommodate an employee's religious beliefs?
Yes, but only to the extent that an employer can do so without assuming undue hardship, bearing more than de minimisu costs, or granting privileges that result in unequal treatment of employees on the basis of their religion.
You have presented us with a non-disputed fact situation in regards to which you request clarification of controlling legal principles and guidance on the application of those principles to the facts in question. Ultimately you seek our opinion on an employer's legal obligations under the Fair Employment Practices Act, sections 48-1101 through48-1123, R.R.S. 1943, vis a vis an employee's religious beliefs or practices. Understandably, a workable solution is called for when, as here, social, economic, and religious principles of great importance seem to clash. The facts underlying your inquiry unfold as follows.
The complainant is a member of the Seventh Day Adventist Church, a well-established religion which observes its Sabbath from sundown Friday to sundown on Saturday. Its membership is required to refrain from work on the Sabbath. The complainant was hired by a nursing home, apparently without discussion of her religious beliefs and/or the attendant restraints said religious affiliation imposed on her availability for work assignments. Upon reporting to work the first day and receiving her week's work schedule, the complainant realized that she was scheduled to work during her Sabbath observance. She immediately approached her new employer and advised them of her dilemma. She further advised them that her previous employer allowed her to work the 3 p.m. to 11 p.m. shift Sunday through Thursday, thus accommodating her need to have Fridays and Saturdays off. The new employer explained to the complainant that the normal shift scheduling provided each employee with every third weekend off; that other employees also wanted more weekends off; and accordingly, it would be unfair to allow the complainant every weekend off while other more senior employees were not similarly allowed to have all weekends off. The employer did advise the complainant that she could take the afternoon off or take time off later in the week to attempt to work out a trade with another employee or make any other arrangements that would allow her to observe her Sabbath and satisfy her work schedule obligations. The complainant apparently made no efforts to work out the suggested arrangements. Instead, she left the employer's premises and later the same day filed a charge of religious discrimination against the employer with the Nebraska Equal Opportunity Commission.
In light of the foregoing situation, you ask whether the employer had a duty to accommodate the complainant's religious beliefs and if so whether the employer's actions in this instance satisfied that duty.
We first look at the terms of the statute, section48-1104, R.R.S. 1943, which provides in pertinent part:
 "It shall be an unlawful employment practice for an employer:
 "(1) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion, . . . or
 "(2) To limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion, . . ."
The foregoing provisions of the Nebraska Fair Employment Practices Act have never been addressed with respect to religion by Nebraska courts. Coupling such absence of state decisions with the observance that the Nebraska Supreme Court made in Physician's Mutual Ins. Co. v. Duffy,191 Neb. 233, 214 N.W.2d 471 (1974), that `the legislative history indicates that our statute was designed to conform to the congressional act,' we look to decisions under Title VII for interpretative guidance. In that regard, the decision rendered in Trans World Airlines, Inc. v. Hardison,432 U.S. 63, 14 E.P.D. 7620 (1977), is unequivocally analogous to the facts you have presented.
In Hardison, the complainant likewise was a member of a religion which observed its Sabbath on Saturdays and forbade its members from working therein. When Mr. Hardison was transferred to another work department his seniority diminished, and he was thereafter unable to bid off during his Saturday Sabbath observance.
Hardison informed TWA and the Union of his dilemma. Various proposals aimed at alleviating Mr. Hardison's conflict were advanced by TWA, the Union, and Hardison. Each, in turn, was found objectionable or unacceptable to the other. Hence no accommodation was effectuated and Hardison continued to be assigned shifts which required that he work on Saturday. In compliance with his religious dictates, Hardison simply refused to report to work on Saturdays. Those refusals ultimately led to his discharge for insubordination.
Hardison, in turn, filed a charge of discrimination with the Federal Equal Opportunity Commission against TWA and the Union claiming that both had violated Title VII by failing to accommodate his religious needs. On the basis of his administrative charge, Hardison later filed suit in federal court. The case eventually weaved its way through the Eighth Circuit into the chambers of the United States Supreme Court, as Trans World Airlines, Inc. v. Hardison,432 U.S. 63, 14 E.P.D. 7620 (1977).
The question as characterized by the United States Supreme Court was `. . . whether it was impermissible under 703(a)(1) to discharge or refuse to hire a person who for religious reasons refused to work during an employer's normal work week.' Id. The answer to that question, the United States Supreme Court noted, rested with a determination of where the line must be properly drawn between `reasonable accommodation' and `undue burden' by and on employers. Justice White, writing for the majority of the court, specifically ruled that [t]o require TWA to bear more than a de minimum cost in order to give Hardison Saturdays off is an undue hardship.' Id. at 432 U.S. 84. The court further indicated that to force TWA to accommodate Hardison by either importing another qualified employee from another department, thereby `short-handing' such other department on Saturdays, or by enticing another employee to assume Hardison's Saturday shift via premium overtime pay benefits, constituted undue burdens for TWA. As the United States Supreme Court viewed the situation, any accommodation which caused TWA to incur costs in order to allow Hardison Saturdays off `would in effect require TWA to finance an additional Saturday off and then to choose the employee who will enjoy it on the basis of his religious beliefs.' Id.
This, the court held, would not be in the true spirit and intent of Title VII.
While the Supreme Court narrowed the spectrum of efforts required of an employer, it is inaccurate to conclude that nothing whatsoever is required of employers to accommodate the religious practices of their employees. To the contrary, the court in a favorable attitude pointed to several of TWA's efforts and noted that they did not constitute any `undue hardship.' One of these efforts was TWA's informal meeting with Hardison to discuss possible solutions to the dilemma. Another consisted of TWA's acquiescence in the efforts being conducted by the Union steward to obtain `shift swaps' for Mr. Hardison. Total indifference or disregard for an employee's religious beliefs will be viewed however, as odious to the commands of the act.
In summary, a literal reading and analysis of theHardison opinion leads to the conclusion that an employer is required only to incur de minimis costs, such as allowing voluntary `work swaps' between employees, in an attempt to accommodate its employee's religious practices. Further, potential accommodation attempts which would have the effect of violating a uniform work rule and in turn would result in the complaining employee receiving greater benefits than others strictly due to religious practices, would not be required of the employer. As summarized by Justice White: ". . . we will not readily construe the statute to require an employer to discriminate against some employees in order to enable others to observe their Sabbath." Id.
When viewed through the lens provided by the foregoing principles, proper dispositional focus obtains more readily on the facts you have presented. For example, the importance of the fact that it was the employer's uniform work practice to schedule its employees with only every third weekend off, becomes readily apparent. To require the employer to violate that uniform practice in order to allow the complainant every weekend off would, in essence, result in the complainant receiving greater benefits than the employer's other employees strictly on the basis of her religious practices. Such an accommodation effort, as the Supreme Court indicated in Hardison, results in `unequal treatment' of employees on the basis of their religion. That result is deemed antithetical to the purpose of the Act.
That the employer offered the complainant time off in order for her to make arrangements whereby her work schedule would remain intact is also a factor of importance. Presumably that offer constituted an invitation to any voluntary `work swaps' the complainant might have been able to effectuate. The invitation also demonstrated the employer's willingness to accommodate the complainant's religious practices. Such an accommodation effort was favorably viewed by the Supreme Court in Hardison.
While the employer made no further efforts or offers to accommodate, it must be remembered that it was precluded from doing so by the complainant's failure to report for work after the initial discussion. Accordingly, in our opinion, the employer in question provided sufficient efforts under the circumstances, to fulfill its legal obligation to accommodate the religious practices of the employee in question.