ZALKINS PEERLESS WIPING COMPANY, A NEBRASKA CORPORATION, APPELLANT, V. THE NEBRASKA EQUAL OPPORTUNITY COMMISSION ET AL., APPELLEES.

348 N.W.2d 846

Filed May 11, 1984. No. 83-106.

Duane M. Katz, for appellant.

Paul L. Douglas, Attorney General, and Dale D. Brodkey, for appellee Nebraska Equal Opportunity Commission.

Clyde A. Christian, for appellee Landers.

KRIVOSHA, C.J., WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an appeal from an order of the district court for Douglas County, Nebraska, affirming the decision of the Nebraska Equal Opportunity Commission (Commission). The Commission, which refused to follow the recommendations of the hearing examiner, held that the appellant, Zalkins Peerless Wiping Company (Zalkins), a corporation, had discriminated against the appellee Paul Landers on the basis of his sex in refusing to hire Landers in appellant's used clothing and rag business.

Neb. Rev. Stat. § 48-1104 (Reissue 1978) provides that "[i]t shall be an unlawful employment practice for an employer: (1) To fail or refuse to hire . . . any individual . . . because of such individual's . . . sex . . . ."

The parties do not dispute that appellant is an employer within the meaning of the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. §§ 48-1101 to 48-1125 (Reissue 1978), nor that appellee Landers is entitled to invoke the provisions of the act.

The method and scope of review in an appeal to the district court from an order of the Commission is governed by Neb. Rev. Stat. § 48-1120(3) (Reissue 1978), which provides in part that "[t]he commission's orders shall not be vacated, modified, or set aside unless: . . . (b) The findings of the commission in support of such order are unreasonable

or arbitrary or are not supported by a preponderance of the evidence."

The standard of review in the district court was therefore one of a de novo review of the record, with an independent determination by the district court. *Farmer v. Richman Gordman Stores, Inc.*, 203 Neb. 222, 278 N.W.2d 332 (1979); *Duffy v. Physicians Mut. Ins. Co.*, 191 Neb. 233, 214 N.W.2d 471 (1974).

In this court, however, since no different statutory standard of review is provided for in the Nebraska Fair Employment Practice Act, we are bound by the provisions of Neb. Rev. Stat. § 84-918 (Reissue 1981), which provides that this court will not disturb the district court's findings if they are supported by substantial evidence. See, *Ranger Division v. Bayne*, 214 Neb. 251, 333 N.W.2d 891 (1983); *Farmer v. Richman Gordman Stores, Inc., supra.*

The text of the Nebraska Fair Employment Practice Act in most respects is identical to that part of the Civil Rights Act of 1964 contained in 42 U.S.C. §§ 2000e et seq. (1976). In application of the Nebraska act, this court has been guided by the decisions of the federal courts in construing similar and parent federal legislation. See *Richards v. Omaha Public Schools*, 194 Neb. 463, 232 N.W.2d 29 (1975).

The record in the instant case reveals, subject to the parties' extenuating explanations, that Landers applied for employment with Zalkins in early September 1979. Zalkins is in the rag/used clothing business in Omaha, Nebraska. It regularly employs 27 or 28 persons in various positions. There are no standards or qualifications for employment at Zalkins and substantially all of the employees are paid minimum wages, with no benefits. Landers was told, after a personnel interview with one of the owners, "that if a job opening came up, that we would get back to him." Within a week Zalkins hired a female "cutter," a person who removes buttons and other unwanted material from the clothing. Shortly after Landers learned of this, he again con-

tacted Zalkins and applied specifically for work as a cutter. Landers was told that if anything came up that he could "fit into," Zalkins would hire him. Within 1 month from Landers' second application, Zalkins hired three more female cutters. Based on these facts, both the Commission and the district court on appeal held that Landers had been discriminated against on the basis of sex.

Throughout the proceedings Landers relied on both the "disparate impact" theory, as outlined in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971), and the "disparate treatment" theory, as outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), to prove his case of sex discrimination. Although the disparate impact and the disparate treatment theories are, in a proper case, alternative grounds for relief, *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978), and both the Commission and the district court held that Landers had proven his case under both theories, we analyze and find substantial evidence, on the record, to affirm the district court's order under the disparate treatment theory, thereby making any discussion of the disparate impact theory unnecessary.

The *McDonnell Douglas Corp. v. Green, supra,* methodology consists of dividing a Title VII discrimination case into three phases. First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802. Third, should the defendant carry the burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

The evidence shows, and Zalkins does not seriously dispute, that Landers did, in fact, prove a prima facie case of discrimination. Landers initially applied for any job at Zalkins in early September 1979. After becoming aware that Zalkins hired a female cutter, Landers reapplied for a job as cutter. As there are no qualifications for this position, it is undisputed that Landers was qualified. Landers was not hired by Zalkins. Within 1 month subsequent to Landers' second application, Zalkins hired several female cutters.

Zalkins seeks to rebut the inference of discrimination by claiming Landers was denied the job not because of his sex but because (1) Landers had not worked for several months prior to his applying at Zalkins, (2) Linda Collins, an employee at Zalkins and the person who had recommended Landers for employment, had a poor work record, (3) prior to his applying at Zalkins, Landers had been observed on the business premises without permission, which was against corporate policy, (4) Landers would, on occasion, take Linda Collins to lunch and Linda would sometimes come back late or not at all, and (5) Zalkins was not in an aggressive hiring position at the time Landers applied.

The U.S. Supreme Court, in the recent case of *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), clarified the nature of the burden that shifts to the defendant after the plaintiff has proved a prima facie case of discriminatory treatment. The court stated at 254-56:

> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. . . . It is sufficient if the defendant's evidence raises

a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

We agree with the district court that Zalkins' proffered reasons for not hiring Landers must be "charitably described as pretextual." As to Landers' previous unemployment, Thomas J. Clark, a co-owner and the individual with whom Landers met during his first interview, stated that when an applicant is referred to them for employment, very little emphasis is put on his or her past employment history. Zalkins never verified previous work records of any potential employee, including Landers. At least one employee of Zalkins who testified stated that she was previously unemployed before being hired by Zalkins. Many employees of Zalkins would be hired "on the spot." Clark, on cross-examination by Landers' attorney, conceded that he did not recall any discussion concerning Landers' past employment history, but he was sure that he had asked about it. Clearly, this proffered reason is pretextual.

Concerning Zalkins' second reason for not hiring Landers, we agree that "Linda Collins did not have

that good of a work record." The evidence reveals, however, that on at least one occasion Linda Collins quit her job, only to be subsequently rehired by Zalkins. Even if some nexus could logically be drawn between Linda Collins' work record and the probable work record of Landers, which it cannot, we strain to comprehend why, if Linda Collins was such an unreliable employee, Zalkins would rehire her.

As its third reason for not hiring Landers, Zalkins contends that Landers had been seen on the business premises without permission, which was against corporate policy. When questioned by Landers' attorney concerning this reason for not hiring Landers, John Houlihan, a coowner of Zalkins, recalled this happening only "once or twice," and further conceded that this was not one of the reasons Zalkins did not hire Landers. Clark testified he could not remember seeing Landers on the premises other than during the job interview.

Zalkins next contends that because Landers would, on occasion, take Linda Collins to lunch and Linda would sometimes come back late or not at all, this had a bearing on not hiring Landers. Houlihan admitted at the hearing that Linda Collins' being late could not be attributed to Landers and that he did not hold it against him.

Finally, Zalkins contends that it was not in an aggressive hiring position when Landers applied for a job. The evidence does not support this contention. One female cutter was hired between the time of Landers' first and second applications. Three other female cutters were hired within a month subsequent to Landers' second application.

Zalkins seems to contend that because it hires employees based on "gut reaction," this subjective hiring practice somehow shields it from scrutiny under the Nebraska Fair Employment Practice Act. Such is not the case. In *United States v. Hazelwood School Dist.*, 534 F.2d 805, 813 (8th Cir. 1976), the

court stated: "Vague and subjective criteria may disguise discriminatory practices, whether or not that was the original intent. . . . [T]he law in this Circuit is clear that employment decisions based on subjective standards carry little weight in rebutting charges of discrimination." The same is true in this jurisdiction.

We hold that there is substantial evidence in the record to support Landers' prima facie case of discrimination, which was not rebutted by Zalkins. Any error in the Commission's use of the Nebraska Department of Labor statistics, which were not admitted into evidence by the hearing examiner, was harmless. It is clear that both the Commission and the district court did not rely on these statistics when they made their findings and orders. We likewise did not utilize the statistics.

One final issue needs to be addressed concerning whether or not the district court erred in sustaining the special appearance filed by the Commission. Upon the filing of an individual complaint of discrimination with the Commission, the Commission is required by § 48-1118(1) to

furnish such employer, employment agency, or labor organization with a copy of such charge within ten days . . . make an investigation of such charge . . . [and] [i]f the commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, [it] shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.

Section 48-1119(1) further provides in part that in the event of a

failure to eliminate any unlawful employment practice by informal methods of conference, conciliation, and persuasion, the commission may order a public hearing. If such hearing is ordered, the commission shall cause to be issued

and served a written notice, together with a copy of the complaint, requiring the person, employer, labor organization or employment agency named in the complaint, hereinafter referred to as respondent, to answer such charges at a hearing before the commission at a time and place which shall be specified in such notice. Such hearing shall be within the county where the alleged unfair practice occurred. The complainant shall be a party to the proceeding, and in the discretion of the commission any other person whose testimony has a bearing on the matter may be allowed to intervene therein.

In this setting the Commission is a neutral fact-finding administrative body. It is neither an adversary nor advocate of either party. We therefore hold that when, as here, a private individual brings a discrimination action against an employer covered by the Nebraska Fair Employment Practice Act, the Commission is not a proper party to any subsequent appeal, and the district court did not err in sustaining the Commission's special appearance.

Appellee Landers is awarded $750 for an attorney fee in this court. *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S. Ct. 2024, 64 L. Ed. 2d 723 (1980); *Farmer v. Richman Gordman Stores, Inc.*, 203 Neb. 222, 278 N.W.2d 332 (1979).

AFFIRMED.

BOSLAUGH, J., participating on briefs.