EVELYN SUE RICHARDS, APPELLEE AND CROSS-APPELLANT, V. OMAHA PUBLIC SCHOOLS, APPELLANT AND CROSS-APPELLEE.
232 N. W. 2d 29

Filed August 7, 1975. No. 39893.

Alex M. Clarke and Baird, Holm, McEachen, Pedersen, Hamann & Haggart, for appellant.

Crosby, Guenzel, Davis, Kessner & Kuester and Steven G. Seglin, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

PER CURIAM.

This case involves a controversy under the Nebraska Fair Employment Practice Act. The complainant, Evelyn Sue Richards, was employed by the respondent, Omaha Public Schools, as a home economics teacher at Bancroft Junior High in Omaha, Nebraska.

On May 24, 1972, the complainant notified the respondent that she was pregnant but would like to continue her teaching duties until the end of October 1972. The complainant had been advised by her physician that the birth would occur on or about December 7, 1972.

The respondent advised the complainant she would be granted a leave of absence for maternity but would not be allowed to teach during the fall semester. The complainant then filed a charge of employment discrimination with the Nebraska Equal Opportunity Commission alleging that the respondent had discriminated against her because of her sex.

Under the Nebraska act it is an unlawful employment practice for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's sex. § 48-1104, R. R. S. 1943.

After an unsuccessful conciliation conference, the matter was referred to a hearing examiner and an evidentiary hearing was held. Following this hearing there was a review hearing before the commission. The commission found that the maternity leave policy and sick leave policy of the respondent constituted unlawful employment practices. The complainant was awarded

back pay for the 2-month period during the fall semester during which she was not allowed to teach; sick leave pay for 16.5 days; and she was credited with 156.5 duty days. The respondent then filed this action under section 48-1120, R. R. S. 1943, to review the decision and order of the commission.

The trial court affirmed the order of the commission so far as the maternity leave policy of the respondent was concerned but vacated that part of the order relating to sick leave. The respondent has appealed and the complainant has cross-appealed.

The issues presented by the appeal and cross-appeal are essentially questions of law. There is little or no dispute in the record concerning any material fact.

The maternity leave policy of the respondent, which was in force in May 1972, provided that the leave should begin at mid-pregnancy and the employee would not be allowed to return to work for a full year after the birth except in cases approved by the superintendent.

Effective September 1, 1972, the respondent's maternity leave policy was changed to provide that the leave would normally commence with the beginning of the sixth month of pregnancy but the actual starting date was to be at the discretion of the superintendent based upon the ability of the employee to perform her duties, the health and safety of the employee, "and in the case of teachers, the continuity of classroom instruction."

The policy was changed again, effective October 2, 1972, by eliminating the provision concerning the sixth month of pregnancy as the normal date of leave commencement.

A maternity leave policy which requires that the leave begin a fixed period before the expected date of birth violates the due process clause of the Fourteenth Amendment to the Constitution of the United States. Cleveland Board of Education v. LaFleur, 414 U. S. 632, 94 S. Ct. 791, 39 L. Ed. 2d 52. To the extent that the respondent's maternity leave policy in effect in May

1972, required the leave to begin at mid-pregnancy, it was invalid. However, in this case the complainant was paid for the months of June, July, and August in 1972 and she was allowed to return to her employment at the beginning of the second semester in February 1973. Thus, the real issue here, so far as the respondent's maternity leave policy is concerned, is whether the respondent could refuse to allow the complainant to teach during the first 2 months of the fall semester in 1972.

The complainant's theory of the case, stated briefly, is that disability resulting from pregnancy must be afforded the same treatment as disability resulting from an illness. The complainant contends that any employment policy which differentiates between disability resulting from pregnancy and disability resulting from an illness results in a discrimination because of sex.

This issue has been described as the most difficult and troublesome one in the area of sex discrimination. Most of the cases which have considered this issue support the complainant's analysis of the question. These decisions for the most part are by the lower and intermediate federal courts and are based on the "guidelines" promulgated by the federal Equal Employment Opportunity Commission (EEOC). Under these guidelines the disability caused by pregnancy is a temporary disability which must be treated the same as any other temporary disability under sick leave plans including the commencement and duration of leave. See 29 C. F. R., § 1604.10.

The guidelines constitute an administrative interpretation of the federal act. The United States Supreme Court has held that the guidelines are entitled to "great deference" where the act itself and the legislative history of the act supports the commission's construction. Griggs v. Duke Power Co., 401 U. S. 424, 91 S. Ct. 849, 28 L. Ed. 2d 158. However, in a recent case two dissenting opinions suggested that the authoritative nature of the guidelines is limited. See Albemarle Paper Co.

v. Moody, June 25, 1975, 43 Law Week 4880.

There is little in the way of legislative history to serve as a basis for determining whether the guidelines express the will of Congress in regard to pregnancy and sex discrimination. The word "sex" was added by a floor amendment one day before the bill was passed by the House of Representatives. See Miller, "Sex Discrimination and Title VII of the Civil Rights Act of 1964," 51 Minn. L. Rev. 877. However, in a related area the legislative history of the Equal Rights Amendment indicates that Congress apparently felt the amendment did not prohibit legislation dealing with a physical characteristic unique to one sex, so-called single-sex-characteristic laws. See Comment, Geduldig v. Aiello: Pregnancy Classifications and the Definition of Sex Discrimination, 75 Col. L. Rev. 441.

Wetzel v. Liberty Mutual Ins. Co., 511 F. 2d 199, is typical of the cases which have held that employment policies which treat pregnancy separately from other disabilities are sexually discriminatory. In the Wetzel case the employer allowed pregnant employees to take a maternity leave of absence of 6 months from the date the leave commenced or 3 months from the date of delivery, whichever came first but no time limitation applied to leaves of absence for other temporary disabilities. The employer's income protection plan provided benefits for disabilities caused by illness but provided no benefit for pregnancy-related disabilities. Relying upon the EEOC guidelines, the court held the employment policies were sexually discriminatory. The court stated: "Since pregnancy is a disability common only to women, to treat it differently by applying a separate leave policy is sex discrimination." Certiorari was granted in the Wetzel case on May 27, 1975, 421 U. S. 987, 95 S. Ct. 1989, 44 L. Ed. 2d 476.

The holding in the Wetzel case may be contrasted with the decision in Geduldig v. Aiello, 417 U. S. 484, 94 S. Ct. 2485, 41 L. Ed. 2d 256. In the Geduldig case

the Supreme Court of the United States held that a California statutory disability insurance system which excluded normal pregnancies from coverage did not violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. Although not decided under the Civil Rights Act, the decision considered the effect of a classification which excluded pregnancy. In a footnote to the majority opinion the court observed that while only women can become pregnant, it does not follow that every legislative classification concerning pregnancy is a sex-based classification. For an interesting comment on the Geduldig case and its implications see 75 Col. L. Rev. 441.

The respondent makes a similar contention here. The respondent points out that a maternity leave is treated the same as any other leave of absence and sick leave benefits are not extended to any employee who becomes disabled while on a leave of absence granted for any purpose. Under the written policy of the respondent an employee may be granted a leave of absence for 1 year at a time for illness, maternity, professional improvement, or military duty. The classification is based not on pregnancy alone because all leaves of absence are treated the same.

However, it should be noted that a classification based on pregnancy is not a classification based on sex. Such a classification distinguishes between pregnant women and all other men and women. Geduldig v. Aiello, *supra.*

The respondent also contends that its refusal to permit the complainant to teach during the first 2 months of the fall semester in 1972 was reasonably necessary to the normal operation of its schools. The letter to the complainant advising her that she would not be allowed to teach during the fall semester stated that continuity of classroom instruction had been considered.

Much of the respondent's evidence was devoted to the matter of continuity of instruction. Dr. Ronald F. An-

derson, the assistant superintendent in charge of personal services for the respondent, testified at length concerning the operation of the school system and the meaning and importance of continuity of instruction.

Dr. Anderson pointed out that the schools are operated for the benefit of the school children and school policies are determined with the educational welfare of the children as the primary consideration. Teachers are employed on a yearly basis with the expectation that they will serve for at least 1 year. In addition to presenting the subject matter to the students, the teachers are expected to develop a rapport and a positive relationship with the students which is an important part of the educational program.

Continuity of instruction means more than having a qualified person available to substitute on a temporary basis for the regular teacher. The planning for a course of instruction is usually on a yearly basis and weekly lesson plans are designed to fit into the long-range plan. It is also desirable that a continuous appraisal be made of the progress and achievement of the students. In order to carry out the policy of continuous instruction the respondent attempts to avoid personnel changes during the year. Where necessary, changes are made at a semester break if possible.

The importance of continuity of instruction was recognized in Cleveland Board of Education v. LaFleur, *supra*. In that case the United States Supreme Court noted that continuity of instruction is a significant and legitimate educational goal. In approving the policy that did not permit teachers on maternity leave to return until the beginning of the semester following delivery, the majority opinion stated this policy served the interest of the schools in avoiding unnecessary changes in classroom personnel during any one school term. The concurring opinion of Mr. Justice Powell stated that school boards have a legitimate and important interest in fostering continuity of teaching. In speaking of con-

tinuity of teaching, the opinion stated the boards are referring in part to their valid interest in reducing the number of times a new teacher is assigned to a given class. It is particularly appropriate to avoid teacher turnover in the middle of a semester, since continuity in teaching approach as well as teacher-pupil relationships are otherwise impaired.

The respondent argues that continuity of instruction constitutes a valid business purpose or "business necessity" in the operation of the school system. A classification based on sex may be lawful if it is necessary for the conduct of the business. This doctrine is incorporated, at least in part, in the Nebraska act. A classification based on sex is lawful if it is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business or enterprise. § 48-1108, R. R. S. 1943.

While continuity of instruction may not be a "business necessity" in the sense that the term has been used generally, it is an important consideration in determining whether the respondent's policies discriminated against the complainant on the basis of her sex. We conclude that they did not.

That part of the judgment of the District Court which affirmed the order of the Nebraska Equal Opportunity Commission is reversed; the judgment is otherwise affirmed and the cause is remanded to the District Court with directions to enter a judgment in conformity with this opinion.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED WITH DIRECTIONS.