527 F.Supp. 1064 (1981)
Barbara MEYERS, Plaintiff,
v.
I.T.T. DIVERSIFIED CREDIT CORPORATION, Defendant.
No. 80-222C(2).
United States District Court, E. D. Missouri, E. D.
December 14, 1981.
*1065 *1066 Charles R. Oldham, St. Louis, Mo., for plaintiff.
H. Kent Munson, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
Plaintiff Barbara Meyers brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. She alleges that defendant discharged her and subjected her to disparate treatment due to her refusal to acquiesce in the sexual advances of her supervisor. Plaintiff asserts that these acts by her supervisor constituted sexual harassment in violation of Title VII and therefore entitle her to relief under this statute.
This case was pled by the plaintiff in two separate counts. One count was determined by a jury. The jury determined that plaintiff was entitled to relief in the amount of one dollar for defendant's violation of the Missouri Service Letter Statute, § 290.140, R.S.Mo. (1969). The Title VII count was tried to the Court sitting without a jury. The Court having considered the verdict of the jury on the service letter count, the testimony of the witnesses, the documents in evidence and the stipulation of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52, Federal Rules of Civil Procedure.

FINDINGS OF FACT
1. Plaintiff, Barbara Meyers, is a white female and a resident of the State of Missouri.
2. Defendant, I.T.T. Diversified Credit Corporation, is a Delaware corporation doing business in Missouri, engaged in an industry affecting commerce. The corporation is an employer within the meaning of 42 U.S.C. § 2000e(b).
3. Plaintiff filed charges of employment discrimination with the Equal Employment Opportunity Commission ("E.E.O.C.") within one hundred eighty days of her termination, and brought this lawsuit within ninety days of receipt of her Right-to-Sue Letter from the E.E.O.C.
4. Plaintiff was employed by defendant, I.T.T. Diversified Credit Corporation on February 16, 1974 as a Computer Terminal Operator. She had sixteen to seventeen years of office experience prior to this appointment.
5. Plaintiff's employment with defendant ended on August 4, 1977. The defendant corporation stated in the Service Letter, issued pursuant to § 290.140, R.S.Mo. (1969), that plaintiff was dismissed because she informed David Bartin, the office manager, that she was unable to work for her immediate supervisor and that she was going home sick and probably would not return. The letter further stated the company considered plaintiff's statement tantamount to a quit.
6. The jury found that the defendant failed to state the true reason for plaintiff's termination in the Service Letter, and therefore defendant corporation was in violation of the Missouri Statute. The jury awarded the plaintiff nominal damages in the amount of $1.00 on this count of the complaint. This Court credits the findings of fact determined by the jury and therefore concludes that the reasons offered by the defendant corporation in this Service Letter do not represent the real reason for plaintiff's dismissal.
*1067 7. Defendant attempted to suggest that plaintiff was guilty of excessive absenteeism prior to her termination. Defendant claimed that plaintiff's neglect of her duties explained her confrontation with Mr. Bartin prior to her dismissal and also the willingness of the defendant to accept plaintiff's actions on August 4, 1977 as being tantamount to a quit. The Court does not find the explanation of plaintiff's dismissal by defendant credible in light of the evidence presented and the testimony of several witnesses.
8. In November of 1976 plaintiff was reviewed by Mr. Bartin, the office manager, and was given a ten percent raise. The review stated that plaintiff was a good employee. Defendant did not present any records in plaintiff's personnel file indicating that her performance was inadequate. Her time sheets from April of 1976 to June of 1977 did not reflect any absenteeism problems; these records were approved by Mr. Bartin. Finally, there was testimony to the effect that the immediate supervisor of the plaintiff, Mrs. Hatch, had indicated to an official of the Missouri Commission of Human Rights that plaintiff performed well at work.
9. There were several events leading up to the termination of the plaintiff. Plaintiff was moved to a back room and her hours were changed such that she had to remain in her office after the other employees had left the building. As a result, Mr. Bartin, the office supervisor, had more opportunities to make sexual advances to the plaintiff. Plaintiff testified as to uninvited instances when her supervisor placed his hand on her shoulder and thighs while she was at work in the terminal room. In addition, plaintiff stated that Mr. Bartin made improper suggestions at the firm Christmas party in 1976. Finally, several witnesses testified that the relationship between Mr. Bartin, the office manager, and the plaintiff was very strained.
10. As a result of these sexual advances by Mr. Bartin plaintiff contacted several officials at I.T.T. Diversified Credit Corporation, notified them of this situation, and attempted to obtain a transfer in May and June 1977. Plaintiff was unsuccessful in these attempts and remained accountable to Mr. Bartin.
11. Mr. David Bartin, the office supervisor, fired Mrs. Meyers on August 4, 1977. He testified that the reason for her termination was plaintiff's refusal to work for her immediate supervisor, Mary Hatch. Mary Hatch was promoted to this supervisory position, despite the fact that she was hired after the plaintiff and that plaintiff had aided in her training. Mr. Bartin further testified that Mrs. Meyers had stated that she would not return to her position. The Court does not credit the testimony of Mr. Bartin. There is overwhelming evidence that the relationship between Mr. Bartin and plaintiff was excessively strained by the time of plaintiff's dismissal.
12. Prior to plaintiff's termination Mr. Bartin had instituted a procedure whereby plaintiff had to indicate in writing every time she wished to leave the office for a short period of time. In addition, plaintiff was denied the opportunity to take time off when her father was in the hospital. Finally, Mr. Bartin reprimanded the plaintiff for spending too long a time at the doctor's office. Mr. Bartin claimed that his actions were necessary in light of Mrs. Meyers' neglect of her work and absenteeism. This absenteeism was never documented in plaintiff's time records, despite the fact that Mr. Bartin personally approved them.
13. Finally, there was evidence presented showing that Mr. Bartin had planned to fire the plaintiff prior to August 4, 1977. Therefore, it was not Mrs. Meyers' action on the day of her termination that precipitated her dismissal, but instead Mr. Bartin's effort to retaliate for plaintiff's failure to respond to his sexual advances. Mr. Bartin did not use the normal company procedure when he dismissed Mrs. Meyers.
14. Plaintiff was subjected to sexual harassment during her employment at I.T.T. Diversified Credit Corporation. Despite her filing of charges of sexual harassment with the E.E.O.C. in June of 1977, no action was taken by the officials at defendant *1068 corporation. Plaintiff was dismissed eventually in retaliation for her refusal to acquiesce in the sexual advances of the office manager.

CONCLUSIONS OF LAW
This Court has jurisdiction of this case pursuant to 42 U.S.C. § 2000e et seq. Plaintiff claims that she was subjected to sexual harassment while employed at I.T.T. Diversified Credit Corporation. She further argues that as a result of her refusal to respond to the sexual advances of her supervisor she was subjected to disparate treatment and eventually dismissed.
In a Title VII cause of action the plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. If the plaintiff is successful, the defendants must then articulate a legitimate nondiscriminatory reason for their actions. The burden of producing evidence then shifts back to the plaintiff who must show by a preponderance of the evidence, that the defendants' explanation was merely a pretext for discrimination. Texas Department of Community Affairs v. Burdene, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Coleman v. Missouri Pacific Railroad Company, 622 F.2d 408 (8th Cir. 1980); Kirby v. Colony Furniture Company, Inc., 613 F.2d 696 (8th Cir. 1980).
The elements of a prima facie case in a Title VII cause of action vary according to the particular claim that a plaintiff asserts. A number of circuits have recently recognized that under certain circumstances the sexual harassment of a female employee will constitute a violation of Title VII. Tomkins v. Public Service Electric and Gas Company, 568 F.2d 1044 (3rd Cir. 1979); Barnes v. Costle, 561 F.2d 983 (D.C.Cir. 1977); Heelan v. Johns-Manville Corporation, 451 F.Supp. 1382 (D.Colo.1978).
In order to establish a prima facie case for a claim of sexual harassment a plaintiff must show by a preponderance of the evidence that first, the submission to the sexual advances of her supervisor was a term or condition of employment; second, plaintiff's employment was substantially affected by her failure to acquiesce to the sexual advances of her supervisor; third, employees of the opposite sex were not affected in the same manner. Tomkins v. Public Service and Electric Gas Company, supra; Heelan v. Johns-Manville Corporation, supra. Finally, in order to impose liability on an employer for the discriminatory acts of its supervisor, the plaintiff must make the additional showing that the employer had actual or constructive knowledge of the discriminatory acts of its supervisor and did nothing to rectify the situation. Tomkins v. Public Service and Electric Gas Company, supra; Heelan v. Johns-Manville Corporation, supra; Miller v. Bank of America, 600 F.2d 211 (9th Cir. 1979).
In this instance plaintiff has established successfully an inference of discriminatory intent by providing this Court with evidence of the different elements of the prima facie case of sexual harassment. It is clear that submission to the sexual advances of the office manager was a condition of plaintiff's employment at I.T.T. Diversified Credit Corporation. Plaintiff's hours and place of work were changed by her supervisor so that she might be more accessible to his advances. See Findings of Fact No. 9. An employee with less experience was advanced to a supervisory position in lieu of the plaintiff, see Findings of Fact No. 10, and finally procedures were instituted requiring the plaintiff to submit a written report every time she wished to leave her post. See Findings of Fact No. 11. Defendant claims these policies were instituted because plaintiff was guilty of excessive absenteeism; however the defendant failed to present any evidence showing that plaintiff was delinquent in her tasks at I.T.T. Diversified Credit Corporation. See Findings of Fact Nos. 7-8. Finally the decision to dismiss the plaintiff was not arrived at in the manner normally followed at I.T.T.; instead the office manager decided to fire Mrs. Meyers because she had *1069 refused to acquiesce in his sexual advances. See Findings of Fact Nos. 12-13.
It is also clear from the evidence presented at trial that plaintiff's employment was substantially affected by the discriminatory actions of her supervisor. In order to establish a violation of Title VII, discrimination on the basis of gender need not be the sole factor motivating a particular employment decision. A plaintiff need only establish that gender substantially contributed to the discriminatory treatment of a particular employee. Coleman v. Missouri Pacific Railroad Company, supra; Barnes v. Costle, supra; Barding v. Board of Curators of Lincoln University, 497 F.Supp. 1013 (W.D.Mo.1980). It is obvious that plaintiff's gender was an indispensable factor in her supervisor's decision to dismiss her and subject her to sexual harassment. The relationship between plaintiff and the office manager was strained because of plaintiff's failure to respond to her supervisor's sexual advances.
The last element of the prima facie case that plaintiff had to establish in order to impose liability on defendant I.T.T. Diversified Credit Corporation is that the defendant had knowledge or constructive knowledge of the discriminatory actions of its office manager. Tomkins v. Public Service Electric and Gas Company, supra; Barnes v. Costle, supra. Generally, an employer is liable for the Title VII violations resulting from the discriminatory practices of its supervisory personnel unless the employer takes action to rectify the situation, or the plaintiff fails to avail herself of the internal procedures provided by the defendant corporation. Miller v. Bank, supra. Mrs. Meyers not only notified her superiors of the problems she was experiencing at I.T.T. but she requested a transfer. Her efforts were futile. See Findings of Fact Nos. 10 and 13. Even after the plaintiff filed charges of discrimination with the E.E.O.C. the officials at I.T.T. failed to rectify the discriminatory treatment of the plaintiff. Upon these facts defendant I.T.T. Diversified Credit Corporation is clearly chargeable with the acts of discrimination and sexual harassment engaged in by its office manager.
Whenever a plaintiff demonstrates successfully a prima facie case of discrimination under Title VII, the burden then shifts to the defendant employer to articulate a legitimate nondiscriminatory reason for its actions. In this case defendant alleged that plaintiff was guilty of excessive absenteeism and disregard of her duties. However, these charges were not documented in plaintiff's review or time records. See Findings of Fact Nos. 7-8. In addition, the jury found that the reason stated by defendant for plaintiff's dismissal in the Missouri Service Letter did not represent the real reason for plaintiff's termination. See Findings of Fact Nos. 5-6. On this basis, this Court concludes that the reasons offered by defendant I.T.T. Diversified Credit Corporation were merely a pretext for illegal discrimination in violation of Title VII. Defendant has failed to successfully rebut the presumption of unlawful discrimination by articulating a legitimate nondiscriminatory reason for its discharge of the plaintiff. Burdene, supra. Accordingly, judgment will be entered for the plaintiff.

DAMAGES
42 U.S.C. § 2000e-5(g) provides a court with the discretion to order "such affirmative action as may be appropriate" upon the finding that the defendant has engaged in an unlawful employment practice. The statute allows the court to order reinstatement with or without back pay, or solely back pay if the court deems that relief to be appropriate. However, the statute limits the back pay award by providing that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." In her complaint, plaintiff has requested this Court to order her reinstatement and award her all back wages, interest, and any employment benefits, that she lost because of defendant's unlawful employment practices. In addition, plaintiff *1070 asks for an award of reasonable attorneys' fees.
The Supreme Court has held that § 706(g) of the Act vests broad discretion in federal courts to fashion appropriate remedies in Title VII cases. Franks v. Bowman Transportation Company, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); Albermarle Paper Company v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). The remedies provided by the statute are neither "automatic or mandatory." Albermarle Paper Company v. Moody, 422 U.S. at 415, 95 S.Ct. at 2370. Therefore, the reinstatement of an employee unlawfully discharged is not mandatory under the statute. The decision to grant or deny reinstatement lies within the sound discretion of the trial court. Burton v. Cascade School District Union High School No. 5, 512 F.2d 850 (9th Cir. 1975); E.E.O.C. v. Kallir, Phillips, Noss, Inc., 420 F.Supp. 919 (S.D.N.Y.1978). It is the opinion of this Court that there are alternative means of granting fair and appropriate relief considering the circumstances of this case. In light of the possibility of difficulties or hostilities that reinstatement might cause and in light of the fact that defendant has transferred its computer operations to another company, reinstatement will be denied.
It is clear that the plaintiff is entitled to a back pay award pursuant to 42 U.S.C. § 2000e-5(g). In light of the policy embodied in the act to make a victim of discriminatory acts whole, it has been held that the award of back pay should include more than straight salary. Among the items that courts have included are interest, overtime, vacation pay, medical benefits and pension benefits that would have accrued to the plaintiff during the relevant period of time. Pettway v. American Cast Iron Pipe Company, 494 F.2d 211 (5th Cir. 1974); Bowe v. Colgate Palmolive Company, 489 F.2d 896 (7th Cir. 1973); Willett v. Emory and Henry College, 427 F.Supp. 631 (W.D.Va.1977); Shaffield v. Northrop Worldwide Aircraft Services, Inc., 373 F.Supp. 937 (S.D.Ala.1974); Tidwell v. American Oil Company, 332 F.Supp. 424 (C.D.Utah 1971). However, the statute mandates that the amounts that the plaintiff earned from other employment or received in the form of unemployment compensation should be deducted from the award of back pay pursuant to 42 U.S.C. § 2000e-5(g). Ostapowicz v. Johnson, 541 F.2d 394 (3rd Cir. 1976); Robinson v. Dow, 522 F.2d 855 (6th Cir. 1975). Therefore, plaintiff will be awarded $34,584.00, which represents the amount of money she would have earned or received from I.T.T. Diversified Credit Corporation if the defendant had not terminated her employment. However, subsequent to her tenure at I.T.T. Diversified Credit Corporation, plaintiff earned and received in unemployment compensation a total of $33,670.28. This amount must be subtracted from the award of back pay pursuant to 42 U.S.C. § 2000e-5(g), which results in an award of $913.72. In addition, plaintiff will be awarded an additional $933.00 for lost vacation pay, and interest on the total award, computed at 8% per annum. Although plaintiff requests damages for monies she would have received from defendant's savings, medical, and tuition plans, plaintiff has failed to sustain her burden on this issue. Plaintiff failed to establish that these benefits would have accrued to her but for her unlawful termination by the defendant. However, in lieu of reinstatement, plaintiff will be awarded an additional $3,000.00 in accordance with the "make whole" policy embodied in the Act. Burton v. Cascade School District Union High School No. 5, supra; E.E.O.C. v. Kallir, Phillips, Noss, Inc., supra. Therefore, plaintiff will be awarded $4,994.46 in damages as compensation for her unlawful termination by defendant I.T.T. Diversified Credit Corporation.
Accordingly, judgment will be entered for the plaintiff and a hearing will be held on Monday, December 21, 1981 at 9:30 a. m. to determine plaintiff's reasonable attorneys' fees.