AIRPORT INN, INC., APPELLANT AND CROSS-APPELLEE, V. NEBRASKA EQUAL OPPORTUNITY COMMISSION, APPELLEE, AND MICHAEL SUMP, APPELLEE AND CROSS-APPELLANT.

353 N.W.2d 727

Filed July 13, 1984. No. 83-303.

Thomas C. Lansworth of Bauer, Galter & Geier, for appellant.

W. Michael Morrow of Hecht, Sweet, Alesio & Morrow, P.C., for appellee Sump.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

PER CURIAM.

This is an appeal from an order of the district court for Lancaster County, which affirmed the decision of the Nebraska Equal Opportunity Commission (Commission) that appellant, Airport Inn, Inc., discriminated against the appellee Michael Sump because of his sex, in violation of the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. §§ 48-1101 to 48-1125 (Reissue 1978). We affirm.

Section 48-1104 provides: ''It shall be an unlawful employment practice for an employer: (1) . . . to discharge any individual . . . because of such individual's . . . sex . . . .''

Airport Inn's four assignments of error relate to the proposition that the district court's order was not supported by a preponderance of the evidence and/or was contrary to law. The appellee cross-appeals concerning the issues of the award of back-pay, attorney fees, and prejudgment interest.

Our scope of review is limited, inquiring only as to whether or not there is substantial evidence to support the district court's order. We do, however, make our own determination with respect to questions of law. *Ranger Division v. Bayne*, 214 Neb. 251, 333 N.W.2d 891 (1983); *Zalkins Peerless Co. v. Nebraska Equal Opp. Comm.*, ante p. 289, 348 N.W.2d 846 (1984).

The evidence most favorable to the appellee's position indicates that Airport Inn is a motel located in Lancaster County, Nebraska. A restaurant and a bar/lounge are located within the motel. Sump was

hired as a bartender by Airport Inn on October 23, 1976. His beginning wage was $2.75 per hour, and on December 1, 1976, he was given a raise to $3 per hour. Sump was also entitled to receive one free meal for each shift that he worked, the retail value of which was $3. Although we deal with the issue later in the opinion, Sump also contends he earned $50 per week in tips. During the period from January 26, 1977, to and including February 11, 1977, Sump worked 95.5 hours and received 12 free meals. Sump's employment at Airport Inn was terminated on February 14, 1977. Within 2 days after Sump's discharge, Airport Inn hired a female bartender to replace him.

On February 28, 1977, Sump filed a complaint with the Commission, contending that he was fired illegally by Airport Inn because Airport Inn was implementing a policy decision to have all female personnel working in the bar/lounge. Airport Inn asserted that Sump was terminated because he was an unsatisfactory employee.

After conciliation efforts failed a hearing was had before a hearing examiner appointed by the Commission. The hearing was concluded on September 13, 1978. After an unexplained and inexcusable delay of nearly 40 months, the hearing examiner filed his findings of fact, conclusions of law, and recommended an order which contained the following findings: (1) That a policy concerning an all-female bar staff did exist; (2) That such policy discriminated against Sump; (3) That Sump was terminated by Airport Inn without an adequate showing of a legitimate business necessity; (4) That the adoption of the policy concerning an all-female bar staff was the predominate reason for Sump's termination; and (5) That Sump was succeeded in his employment by a female. With respect to damages the hearing examiner found: (1) Sump was terminated in February 1977, and he did not obtain equal, alternative employment for a period of 230 days; (2)

While employed at Airport Inn, Sump's average rate of pay per day was $35.37, which resulted in total gross lost wages of $8,135.10; (3) Sump's total interim earnings, including unemployment compensation of $1,080, were $1,952.69; and (4) Sump's net loss was $6,182.41. The hearing examiner made no award of attorney fees, and he did not award Sump any prejudgment interest on the net loss. On March 5, 1982, the Commission entered its final order, in which it adopted in toto the hearing examiner's recommendations.

The district court, on appeal, held that "[t]he only portion of the [Commission's] order which the court finds not to be supported by a preponderance of the evidence is that which pertains to the computation of damages, based upon tips purportedly received by the claimant." The court went on to reduce Sump's backpay award to $4,695, to affirm the Commission's final order in all other respects, to award no prejudgment interest, and to require that each party pay its own costs and attorney fees.

Because the NFEPA is patterned from that part of the Civil Rights Act of 1964 contained in 42 U.S.C. §§ 2000e et seq. (1976), it is appropriate to look to federal court decisions construing similar and parent federal legislation. See, *Richards v. Omaha Public Schools*, 194 Neb. 463, 232 N.W.2d 29 (1975); *Zalkins Peerless Co. v. Nebraska Equal Opp. Comm.*, *ante* p. 289, 348 N.W.2d 846 (1984).

We begin our analysis by finding that the appellee did indeed establish, under the theory of disparate treatment, a prima facie case of sex discrimination. The appellee demonstrated, without rebuttal from Airport Inn: (1) That he was a male employee hired as a bartender by Airport Inn; (2) That he was discharged from that position; and (3) That shortly after his discharge, Airport Inn hired a female bartender to replace him. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Once Sump established his prima facie case, Airport Inn had the burden to rebut the resulting inference of discriminatory intent, because, in light of the prima facie case, a trier of fact presumes that the employer's acts, "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978). Airport Inn articulated the following reasons for Sump's discharge: (1) Unsatisfactory personal appearance and hygiene. This included improper dress, uncombed hair, a habit of chewing ice cubes and then throwing the ice back into the ice bin, and the use of a bar towel for a personal table napkin and then using the same towel to clean the bar area. (2) Failure to follow company rules and policy. This included eating meals at the bar instead of in the designated employee eating area, drinking in the bar when he was not "clocked out," refusing to wear a uniform, "not marketing drinks," not keeping the bar area neat and clean, and having bad customer relations.

Airport Inn set forth nondiscriminatory explanations "legally sufficient to justify a judgment for the [employer]"; therefore, it then became incumbent upon Sump "to demonstrate that the proffered reason[s] [were] not the true reason[s] for the employment decision." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255-56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). Sump "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation[s] [are] unworthy of credence." *Id.* at 256. Sump carried his burden of proof under either standard.

On February 22, 1977, Denise McConnell, Sump's immediate supervisor, gave Sump a letter of recommendation which stated: "To whom it may concern: Myke Sump was a [sic] honest, dependable,

sober bartender. His termanation [sic] was caused by a policy decision, uniforms were purchased for an all female bar." /s/ "Denise McConnell Bar Manager 2/22/77." McConnell's explanation for the letter was that Sump told her what to put in the letter and that she complied. Sump agreed that he had asked McConnell for the recommendation, but he denied that he had told her the contents. Even if Sump directed the contents of the letter, McConnell testified she was not coerced in any way to write the recommendation.

Roy Gentry, the general manager of Airport Inn at the time of Sump's discharge, also provided Sump with a letter of recommendation. The letter stated that Sump "was a dependable, honest and courteous person." Gentry also told Sump that Sump had been fired because of a policy change and an effort to "upgrade the bar." Gentry denied that there was a policy to hire an all-female bar staff.

Sump called three witnesses who were employees at Airport Inn when he was terminated. Each of the three witnesses testified that McConnell told them that Sump was terminated by Airport Inn because Gentry wanted an all-female bar staff. The witnesses also testified that Sump's appearance was good. Two of the witnesses testified that Sump was a good bartender; the third witness was not asked. It was undisputed that there was no dress code in effect for the bar staff while Sump was employed, save for the fact that he was not to wear blue jeans, a rule which Sump obeyed.

Sump testified that he was never told what to wear; he was never criticized about his appearance; he was never told where to eat; and he never told McConnell that he would not wear a uniform. (In fact, Sump testified that he did wear a uniform at two previous places of employment.) He testified that there were other bartenders who ate at the same place that he ate; McConnell would often compliment his work; and he was reprimanded only once

when he forgot to clock out before having a drink at the bar. Sump further denied chewing ice and throwing it back into the ice bin and using a bar towel as a personal napkin. Concerning the reason for discharge, Sump testified that both McConnell and Gentry expressed no dissatisfaction with his work and that McConnell told him that the letter of recommendation expressed why he was fired.

Resolution of these conflicting claims depended largely upon the credibility of witnesses. Not surprisingly, both the Commission and the district court, on appeal, chose to believe Sump's version. We find that not only is the appellee's position supported by substantial evidence but that the evidence is overwhelming.

Airport Inn further contends that Sump's award must be reduced because Sump did not use reasonable diligence in mitigating his damages. Backpay awards under the NFEPA must be reduced by "earnings or amounts earnable with reasonable diligence by the person or persons discriminated against . . . ." § 48-1119(3). Unquestionably, wrongfully discharged employees have an obligation to use reasonable efforts to mitigate their damages. The only issue is whether the district court's finding that Sump exercised reasonable diligence is supported by substantial evidence.

"A claimant is required to make only reasonable exertions to mitigate damages, and is not held to the highest standards of diligence. It does not compel him to be successful in mitigation. It requires only an honest, good faith effort." *United States v. Lee Way Motor Freight, Inc.*, 625 F.2d 918, 938 (10th Cir. 1979). Once an unlawfully discharged employee produces evidence in support of his claim for backpay, contending that he was unable to find comparable work, the employer has the burden of showing that the discharged employee did not exercise reasonable diligence in mitigating his damages. *Di Salvo v. Chamber of Commerce, etc.*, 568 F.2d 593

(8th Cir. 1978); *Edwards v. School Bd. of City of Norton, Va.*, 658 F.2d 951 (4th Cir. 1981).

The record reveals that Sump made in excess of 25 contacts with prospective employers after his termination by Airport Inn and before finding comparable employment. The first contact was made immediately on the day that he was notified of his discharge. Sump registered with the Nebraska Job Service and also took the Nebraska Merit System employment examination. He worked part time on two jobs prior to obtaining equal, alternative employment on October 1, 1977. Airport Inn's assertion that Sump turned down a job offer is not supported by the record. With respect to the testimony by the appellant's expert witness that, in his opinion, Sump did not extend a reasonable effort to find another job, we need only state that his standard need not be the legal standard. We further note that triers of fact are not required to take the opinions of experts as binding on them. *Hamer v. Henry*, 215 Neb. 805, 341 N.W.2d 322 (1983); *Novotny v. Electric Hose & Rubber Co.*, 214 Neb. 216, 333 N.W.2d 406 (1983). The district court's finding that Sump exercised reasonable diligence to mitigate his damages is supported by substantial evidence.

We now turn to the appellee's cross-appeal. The first issue is the district court's reduction of Sump's backpay award. Sump contends that the district court erred in reducing his backpay award by the amount of tips Sump allegedly would have earned had he not been unlawfully discharged. Sump contends that it was inconsistent for the district court to exclude the tips which he purportedly would have earned at Airport Inn from the backpay award, but to include, as interim earnings, the tips that he received while employed at the Zoo Bar. Sump concedes that he did not report any of the tips received on his state or federal income tax returns. The only evidence concerning the amount of tips allegedly made at Airport Inn is Sump's own self-serving

statement. With respect to the inclusion of the tips earned at the Zoo Bar as interim earnings, but the exclusion of the tips allegedly made at the Airport Inn in Sump's backpay award, we note that the former testimony is a statement against interest, while the latter is not. The substantial evidence standard of review is indeed a double-edged sword.

Sump next contends that the district court erred in failing to award him prejudgment interest on the backpay award granted by the Commission. Although there are federal cases which hold both ways, see, *Taylor v. Philips Industries, Inc.*, 593 F.2d 783 (7th Cir. 1979) (prejudgment interest denied), and *Washington v. Kroger Co.*, 671 F.2d 1072 (8th Cir. 1982) (prejudgment interest awarded), the law in Nebraska is well settled that

> prejudgment interest may be recovered on claims that are liquidated. A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion. . . . Where a reasonable controversy exists as to the plaintiff's right to recover or as to the amount of such recovery, the claim is generally considered to be unliquidated and prejudgment interest is not allowed.

*Classen v. Becton, Dickinson & Co.*, 214 Neb. 543, 545, 334 N.W.2d 644, 645 (1983).

An award of backpay, as the instant case aptly reveals, is not subject to exact computation. Many variables need be considered before the amount of the award, if any, is set. The district court did not err in denying Sump prejudgment interest.

Sump's final contention deals with an award of attorney fees to a prevailing plaintiff under the NFEPA. Sump contends that the district court abused its discretion in failing to award him attorney fees for prosecuting his case against Airport Inn. We agree.

Section 48-1120(6) states that "[i]n any action or

proceeding under sections 48-1101 to 48-1125, wherein an appeal is lodged in the district court, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs."

Section 48-1120(7) provides that even if no judicial review is sought, the enforcement of the Commission's order must be initiated through the district court. Consequently, the district court may, in its discretion, award the prevailing party attorney fees even if no judicial appeal is sought.

In construing 42 U.S.C. §§ 1988 and 2000e-5(k) (1976), the federal law after which the Nebraska provision is modeled, the U.S. Supreme Court held in *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 63, 100 S. Ct. 2024, 64 L. Ed. 2d 723 (1980), that "a prevailing plaintiff 'ordinarily is to be awarded attorney's fees in all but special circumstances.' " See, also, *Hameed v. Intern. Ass'n of Bridge, etc.*, 637 F.2d 506 (8th Cir. 1980); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *Farmer v. Richman Gordman Stores, Inc.*, 203 Neb. 222, 278 N.W.2d 332 (1979); *Zalkins Peerless Co. v. Nebraska Equal Opp. Comm.*, ante p. 289, 348 N.W.2d 846 (1984).

The Court in *New York Gaslight Club, Inc. v. Carey, supra*, went on to hold that a prevailing plaintiff should be awarded reasonable attorney fees in all stages of the proceedings, including those undertaken in the various state administrative agencies such as the Commission. Under the NFEPA, Sump was required to begin his proceedings against Airport Inn through the Commission. The initial hearing was Sump's sole opportunity to build a record on which to base his claim. The use of competent counsel at this hearing is nearly indispensable. Sump was successful in his action before the Commission, and it was an abuse of discretion for the district court not to award attorney fees.

As to the proceeding in district court, Airport Inn asserts that it was "successful in that appeal" be-

cause that court reduced the Commission's award of backpay. Although we are cognizant of the fact that success can sometimes be measured in small ways, one must query as to the burden of this appeal. The appellee is hereby awarded $2,000 in attorney fees for the prosecution of his claim against Airport Inn.

Although not initially addressed by the parties in this case, this court asked the parties, upon reargument, to address the question that if employment discrimination is found, whether or not, under the NFEPA, unemployment compensation benefits should be deducted from the discriminatee's backpay award. Both the Commission and the district court deducted $1,080 that Sump received as interim unemployment compensation benefits from Sump's backpay award.

We have not passed on this question, but because the backpay provisions of the NFEPA are modeled after parent federal legislation, we look to several of the federal jurisdictions which have examined the issue. The split of authority in this area is conspicuously noticeable.

The third, fourth, ninth, and eleventh federal circuit courts recently have adopted the rule that unemployment compensation benefits should not be deducted from a discriminatee's backpay award. See, *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77 (3d Cir. 1983); *E. E. O. C. v. Ford Motor Co.*, 645 F.2d 183 (4th Cir. 1981), *rev'd on other grounds* 458 U.S. 219, 102 S. Ct. 3057, 73 L. Ed. 2d 721 (1982), *adhered to the original position on remand* 688 F.2d 951 (4th Cir. 1982); *Kauffman v. Sidereal Corp.*, 695 F.2d 343 (9th Cir. 1982); *Brown v. A.J. Gerrard Mfg. Co.*, 715 F.2d 1549 (11th Cir. 1983).

In other federal and state jurisdictions unemployment compensation benefits are automatically deducted from the backpay award, or the deduction is discretionary. See, *Merriweather v. Hercules, Inc.*, 631 F.2d 1161 (5th Cir. 1980); *Equal Emp. Op. Com'n v. Enterprise Ass'n Steamfitters*, 542 F.2d 579 (2d

Cir. 1976), *cert. denied* 430 U.S. 911, 97 S. Ct. 1186, 51 L. Ed. 2d 588 (1977); *Satty v. Nashville Gas Company*, 522 F.2d 850 (6th Cir. 1975) (without discussion), *aff'd in part, vacated in part on other grounds* 434 U.S. 136, 98 S. Ct. 347, 54 L. Ed. 2d 356 (1977); *Bowe v. Colgate-Palmolive Company*, 416 F.2d 711 (7th Cir. 1969); *Meyers v. I.T.T. Diversified Credit Corp.*, 527 F. Supp. 1064 (E.D. Mo. 1981); *Foods, Inc. v. Iowa Civil Rights Commission*, 318 N.W.2d 162 (Iowa 1982).

We are persuaded by the rationale in the decisions which hold that unemployment compensation benefits are to be deducted from a discriminatee's backpay award. The purpose of a backpay award is to place the discriminatee in the position he or she would have been in but for the discriminatory practice of the employer. Since unemployment compensation is funded by employer contributions, including Airport Inn, the benefits are not collateral. We conclude that the district court was correct in deducting the $1,080 Sump received in interim unemployment compensation benefits from his backpay award.

AFFIRMED AS MODIFIED.

WHITE, J., concurring in part, and in part dissenting.

I concur with the majority's result in this case, with the exception of that part of the opinion which holds that interim unemployment compensation benefits are to be deducted from a discriminatee's backpay award. The majority correctly notes that there is a conflict of authority as to whether an award of backpay should be reduced by unemployment compensation benefits received by the discriminatee. Unlike the majority, however, I am persuaded by the rationale in the recent decisions which hold that unemployment benefits are not to be deducted from a discriminatee's backpay award. The design and purpose of the Nebraska Fair Employment Practice Act is to eliminate discrimina-

tory employment practices, not to foster them. I would therefore hold that it was error, as a matter of law, to deduct the $1,080 Sump received in interim unemployment compensation benefits from his backpay award.

SHANAHAN and GRANT, JJ., join in this concurrence and dissent.