BENNIE WILLIAMS, APPELLANT AND CROSS-APPELLEE, V. THE
GOODYEAR TIRE & RUBBER COMPANY, APPELLEE AND
CROSS-APPELLANT.

366 N.W.2d 132

Filed April 19, 1985.   No. 84-229.

R. Kent Radke of Badami and Radke, for appellant.

Paul M. Schudel of Woods, Aitken, Smith, Greer, Overcash
& Spangler, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE,
SHANAHAN, and GRANT, JJ.

HASTINGS, J.

The plaintiff, a former employee of The Goodyear Tire &
Rubber Company, filed a charge of discrimination under the

Nebraska Fair Employment Practice Act, Neb. Rev. Stat. §§ 48-1101 to 48-1125 (Reissue 1984), specifically § 48-1118.

Following a hearing before the Nebraska Equal Opportunity Commission (NEOC) that the employer was not guilty of any employment discrimination, the plaintiff appealed to the district court, which affirmed the action of the commission, and Williams now appeals to this court. He assigns as errors the findings of the district court that plaintiff was not a member of a protected class and had not proved a prima facie case of employment discrimination and that the employer's requirement of an unrestricted release from medical care was a bona fide occupational qualification within the terms of § 48-1108.

The employer has cross-appealed from the order of the district court in not allowing an attorney fee to Goodyear under the provisions of § 48-1120(6). We affirm as to the denial of benefits to the plaintiff and reverse as to the denial of attorney fees to the employer.

Williams had been employed as a pipefitter by Goodyear at its Lincoln plant since December 6, 1976. On November 2, 1978, while on the job, he injured his left wrist, knee, and ankle. Portions of the record of the proceedings before the Nebraska Workmen's Compensation Court were introduced in these proceedings. The compensation court found Williams to have been temporarily totally disabled during several periods of time, including from May 3, 1979, to and including October 27, 1980. Williams was also determined to have suffered from a 17 1/2-percent permanent partial loss of use of the left foot.

In spite of those findings by the compensation court, the plaintiff's orthopedic surgeon released him to return to work on January 21, 1980, although the testimony is conflicting as to whether that release was received by Goodyear.

Williams did present a release from his attending physician, Dr. Arthur Weaver, to the personnel manager at Goodyear on January 31, 1980, which stated: "Pt has been advised he can return to light duty work in one week. Recent surgery (L) ankle."

Williams reported for work on February 7, 1980, and was told he needed a preemployment physical by the company's

physician, Dr. R.A. Hillyer, as required by union contract. That same day Williams reported to Dr. Hillyer, who discussed with him the terms of Dr. Weaver's release and briefly examined plaintiff. Dr. Hillyer then forwarded a report to Goodyear's personnel manager, Tom Booth, who discussed the report with Dr. Hillyer and then with Williams.

The report found that Williams could return to work as Dr. Weaver had suggested, and stated that he should be on light duty and away from dust and noxious fumes, presumably because of a known asthmatic condition. It further stated that he should not do any heavy servicing, should not do heavy lifting, pushing, or pulling, and, although he could stand and use his arms and hands freely, he should limit his lifting to 15 pounds often repeated, and 35 pounds occasionally. According to Dr. Hillyer, the lifting restriction was as a result of his interpretation of the term "light duty" based on some 40 years of experience in industrial medicine.

As a result of that report, Williams was informed that he was not capable of returning to his former position as a pipefitter and that an alternative replacement must be found. However, when Williams insisted that he was capable of doing the pipefitter job, he was told by Booth that he would have to get a clarification of the "light duty" restriction from Dr. Weaver, which Williams agreed to do.

A report dated February 21, 1980, from Dr. Weaver, characterized as an interpretation of the term "light duty," simply reiterated that restriction in the same terms. Williams was informed that the report was not satisfactory and that a clarification must be obtained. No such clarification was ever furnished to Goodyear.

In the meantime, Williams had received, on February 21, a letter from Goodyear terminating his employment because of failure to report to work for the alternative position for 7 scheduled working days without proper notice to the company. However, Williams was given another opportunity to obtain the clarification letter from Dr. Weaver, as indicated above; and when it was not forthcoming, Williams received, on March 3, a second termination notice based on his failure to present adequate information accounting for his absence from work.

Later, both Williams and Booth met with union representatives on March 13 and 14, at which time Goodyear confirmed its position of considering Williams' employment terminated. The complaint in this case was then filed.

With respect to the plaintiff's assignments on appeal of a review by the district court of an order of the NEOC, this court will not disturb the district court's findings of fact if they are supported by substantial evidence. The court will, however, reach independent conclusions with respect to questions of law. *Airport Inn v. Nebraska Equal Opp. Comm.*, 217 Neb. 852, 353 N.W.2d 727 (1984); *Nebraska P.P. Dist. v. Lacy*, 215 Neb. 462, 339 N.W.2d 286 (1983).

Substantial evidence requires this court to ask whether the district court could have fairly and reasonably found facts as it did. See *Beatrice Manor v. Department of Health, ante* p. 141, 362 N.W.2d 45 (1985).

Turning, then, to the first assignment, plaintiff Williams was required to establish by a preponderance of the evidence a prima facie case of disparate treatment. He must establish (1) that he is a member of a protected class within the meaning of the Nebraska Fair Employment Practice Act, §§ 48-1101 et seq.; (2) that he is qualified for the position of employment sought; (3) that he applied for and was rejected for that position; and (4) that after he was rejected the job remained open. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See, *Airport Inn, supra; Zalkins Peerless Co. v. Nebraska Equal Opp. Comm.*, 217 Neb. 289, 348 N.W.2d 846 (1984). This prima facie case must be shown by a preponderance of the evidence before the defendant must come forth and show the legitimacy of its actions. *Lacy, supra*.

The plaintiff claimed he was "disabled" under the statute. Section 48-1102(8) defines "disability" as follows:

Disability shall mean any physical or mental condition, infirmity, malformation, or disfigurement which is caused by bodily injury, birth defect, or illness, including epilepsy or seizure disorders, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impediment,

deafness or hearing impediment, muteness or speech impediment, or physical reliance on a dog guide, wheelchair, or other remedial appliance or device and shall also mean the physical or mental condition of a person which constitutes a substantial handicap, as determined by a physician, but is unrelated to such person's ability to engage in a particular occupation.

We believe it to be extremely doubtful that it was the intention of the Legislature to include one in the position of plaintiff as having a disability under the Fair Employment Practice Act or that plaintiff fulfills in fact the requirements of the foregoing section. However, because we conclude that he failed to meet his burden of proving that he was physically qualified to perform the duties of the position sought, as we shall now explain, it is not necessary to consider any other of the plaintiff's assignments of error.

Dr. Weaver's release placed light duty restrictions on Williams. No clarification was ever received from Dr. Weaver which provided that Dr. Hillyer's interpretation of "light duty" was erroneous or that Williams was sufficiently recovered to perform all the duties of a pipefitter.

Williams, in his own testimony before the Workmen's Compensation Court and the NEOC hearing officer, admitted he could only do the job if accommodations were made. He also admitted that the job involved lifting up to 75 pounds individually or 150 pounds jointly at a given time. These amounts exceed Dr. Hillyer's interpretation of Williams' light duty restrictions.

Williams also admitted the job involved quite a bit of walking, standing, and moving with heavy equipment. He estimated two-thirds of his day is spent walking and standing up, and he must squat from time to time and flex his ankles due to the condensed space of the working area. These assertions tend to be corroborated by the company's job description of a pipefitter.

Performing these duties would do nothing but aggravate Williams' condition in light of his complaints made before the compensation court on June 16, 1980, that his ankle still gives him pain at the end of the day and that he cannot remain on his

feet for an entire day due to swelling.

Finally, at the very time Williams sought to return to employment as a pipefitter, he was considered 17 ½-percent permanently partially disabled by the compensation court. As the hearing officer said:

> The Compensation Court has found (on Complainant's urging I might add) that the Complainant was totally disabled on the very date Complainant says he was willing to go back to work for Goodyear, i.e. February 7, 1980. As mentioned above, the Complainant cannot have it both ways. To find the Complainant now able to work on February 7, 1980, albeit with a "disability", would make a sham out of the previous Workmen's Compensation Court hearings. This I am unwilling to do.

Clearly, Williams was not medically or physically qualified for the job at the time in question, and he has failed to meet his burden of establishing a prima facie case. It is unnecessary to consider further his appeal. The district court was correct in rejecting his claim.

As to the defendant's cross-appeal, in *Airport Inn v. Nebraska Equal Opp. Comm.*, 217 Neb. 852, 353 N.W.2d 727 (1984), although we recognized that the awarding of attorney fees to the successful party was discretionary on the part of the district court, we held that absent special circumstances, the failure to award such fees generally was an abuse of discretion. Section 48-1120(6), which provides for attorney fees, refers to the prevailing party and recognizes no distinction between employer or employee.

In this case we believe the employer did everything required of it to comply with the rules and the law, and treated the employee fairly in that regard. The plaintiff's insistence in pursuing a claim under the circumstances of this case, as outlined above, constitutes conduct which is as unwarranted as that of an employer who denies a claim on a similar foundation. The defendant is awarded an attorney fee of $250 for its defense of this claim by the plaintiff. To that extent the judgment of the district court is modified.

AFFIRMED AS MODIFIED.

KRIVOSHA, C.J., concurring in part, and in part dissenting.

I concur in that portion of the majority opinion which holds that judgment should be entered in favor of the appellee, The Goodyear Tire & Rubber Company. I dissent, however, from that portion of the opinion which finds that we are compelled to award an attorney fee in favor of Goodyear Tire & Rubber and against the appellant, Williams.

Neb. Rev. Stat. § 48-1120(6) (Reissue 1984) does not require a court to enter an attorney fee. Rather, it provides that the trial court "in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs." While I recognize that in the case of *Airport Inn v. Nebraska Equal Opp. Comm.*, 217 Neb. 852, 353 N.W.2d 727 (1984), we held that absent special circumstances, the failure to award such fees generally is an abuse of discretion, I believe in the instant case there are special circumstances which the district court apparently took into account and which we on appeal are disregarding.

While the financial size of a litigant is not generally to be considered by a court in resolving the *merits* of the case, I do believe that when exercising discretion with regard to the allowance of attorney fees in cases brought under acts intended to eliminate discrimination, it is an appropriate consideration. By our decision today we have notified all persons who may claim to be the subject of discrimination that should it be determined, even in a close case, that no violation of the Nebraska Fair Employment Practice Act occurred, the individual bringing the charges will be required to pay attorney fees to the prevailing employer. This rule seems to apply without regard to whether house counsel or outside counsel is employed. That simply does not square with the purpose of the act as set out in Neb. Rev. Stat. § 48-1101 (Reissue 1984). Section 48-1101 reads in part as follows:

> It is the policy of this state to foster the employment of all employable persons in the state on the basis of merit regardless of their race, color, religion, sex, disability, or national origin, and to safeguard their right to obtain and hold employment without discrimination because of their race, color, religion, sex, disability, or national origin. Denying equal opportunity for employment because of

race, color, religion, sex, disability, or national origin is contrary to the principles of freedom and is a burden on the objectives of the public policy of this state.

Furthermore, as one reads the act, it is clear that the purpose of the act is to afford individuals who do not stand on equal footing with employers an opportunity to be heard. By imposing an attorney fee in every case in which the individual "loses," we will effectively "chill" the individual's right to file suit by reason of the fear that not only will the individual be unemployed but will also be required to pay attorney fees. Certainly, there may be instances where the individual and the prospective employer are equals. In that case the allowance of an attorney fee may be appropriate. Not so in the instant case. While at first blush it may seem appropriate to treat a large corporate employer in the same manner as an individual, yet on further reflection it occurs to me that the whole purpose of the Nebraska Fair Employment Practice Act is to grant a benefit to individuals seeking employment. Most often, employees who are compelled to seek redress under this act are individuals for whom the payment of an attorney fee to a corporate employer poses a nearly impossible burden and would discourage them from seeking redress in the courts. This runs contrary to the social purposes for enacting the legislation in the first place. While courts must do everything they can to discourage frivolous suits, they should not, in their desire to control dockets, impose burdens upon individuals of such a nature that they will be fearful to seek redress to which they may be lawfully entitled. I would not have interpreted § 48-1120(6) to "require" us to impose an attorney fee in this case.