699 F.Supp. 206 (1988)
Cynthia WHITES, Plaintiff,
v.
Harry R. HAHN, et al., Defendants.
No. 85-2939C(6).
United States District Court, E.D. Missouri.
November 9, 1988.
Charles M. Poplstein, Thompson & Mitchell, St. Louis, Mo., for Whites.
Bernard W. Weitzman, Lloyd J. Vasquez, Jr., Friedman, Weitzman & Friedman, P.C., St. Louis, Mo., for Genuine Motor Parts and Fortune Financial Enterprises, Inc. and Harry R. Hahn.

MEMORANDUM OPINION
GUNN, District Judge.
This action is brought by plaintiff Cynthia Whites under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Plaintiff alleges that she was unlawfully terminated from her employment by reason of her pregnancy and sex.
*207 Having considered the pleadings, evidence and applicable law, the Court enters judgment for plaintiff based on the following findings of fact and conclusions of law pursuant to Rule 52, Fed.R.Civ.Pro.

Findings of Fact and Conclusions of Law
The findings of fact are intended to resolve any differences based on the credible evidence presented at trial.
There are two basic issues to resolve: subject matter jurisdiction and discrimination.
1. Regarding subject matter jurisdiction, defendants Hahn and Fortune Financial Enterprises (Fortune) contend that they are not an "employer" within the meaning of Title VII by reason of having fewer than 15 employees. The Court finds that plaintiff was employed by all defendantsHahn, Fortune and Genuine Motor Parts, Inc. (Genuine) as a single employer, and that all defendants employ more than 15 persons and are subject to provisions of Title VII.
2. As to whether plaintiff's termination was by reason of her pregnancy, the Court finds that plaintiff has met her burden and proved that termination of plaintiff's employment was by reason of her pregnancy.

The Jurisdictional Issue
The jurisdictional issue requires the identification of the interrelationship between defendant corporations, defendant Harry R. Hahn and certain other businesses.
At the time of her discharge, plaintiff worked as administrative assistant for defendant Harry Hahn and certain of his companies. Hahn was president, director and stockholder of Fortune Financial Enterprises, Inc. (Fortune), Genuine Motor Parts, Inc. (Genuine), and HBH, Inc., which operated a bowling alley in Eldon, Missouri.
It is stipulated that Genuine employs more than 15 employees, and the Court finds as a fact that Fortune and Genuine are engaged in business affecting interstate commerce. Hahn was the person principally responsible for the day-to-day operation and management of Fortune and Genuine.
In June 1980, Hahn employed plaintiff to work for him as administrative assistant, and during the period from June 1980 through the time of plaintiff's termination of employment on June 22, 1984, plaintiff assisted Hahn with respect to the operations of Genuine, Fortune and HBH.
The Court finds that Genuine and Fortune's operations were interrelated and that the jurisdictional requirements of 42 U.S.C. § 2000e(b) are met.
Plaintiff performed secretarial, clerical and accounting duties for both Fortune and Genuine and ran errands for both companies. Equipment was leased from Fortune to Genuine. Many of Genuine's business records were maintained at Fortune's corporate office. Through Harry Hahn, Genuine and Fortune also shared common management. William Nardoni and Hahn were the officers and directors of Genuine and Fortune. The two companies also shared common ownership, as Hahn owned 50% of the stock of both Genuine and Fortune, and William Nardoni owned 25% of the stock of Fortune and 50% of the stock of Genuine. Hahn also centrally controlled Genuine and Fortune's labor relations. Contrary to Hahn's assertions, the testimony of Glen Curtisthe manager of Genuine during the relevant time periodestablishes that personnel matters concerning Genuine employees and certain other business decisions concerning Genuine were discussed and cleared with Hahn. Also, Genuine's office manager, Mary Womack, reported and was responsible to Hahn.
It is palpable from the evidence before the Court that plaintiff did work for Hahn, Fortune and Genuine at Hahn's direction and supervision and that there was an interrelation between these corporations to place the substance of plaintiff's complaint within the ambit of Title VII.
E.E.O.C. v. Financial Assurance, Inc., 624 F.Supp. 686 (W.D.Mo.1985) is directly felicitous to the situation in this case. The facts of this case parallel those in Financial *208 Assurance dramatically, in that there is the same interrelationship of operations with plaintiff's services in each case being shared by various corporations; there is a common management of the various companies in this case by Harry Hahn; there is substantial common ownership and financial control and significant degree of interrelationship of internal operations and centralized control of labor relations. E.E. O.C. v. Financial Assurance, Inc., 624 F.Supp. at 689-91.
The fact that many of Genuine's employees were union members does not enervate the critical point that Hahn exercised an element of centralized control over non-union employees of both Fortune and Genuine. Smith v. Jones Warehouse, Inc., 590 F.Supp. 1206 (N.D.Ill.1984). Giving the required liberal construction to the definition and treatment of employer within the meaning of Title VII, Baker v. Stuart Broadcasting Co., 560 F.2d 389, 391 (8th Cir.1977), the Court concludes that Hahn, Fortune, Genuine and HBH are a single employer entity for the purposes of Title VII. E.E.O.C. v. Financial Assurance, Inc., 624 F.Supp. at 691.
It is also evident that plaintiff was employed by Hahn and Genuine together. She performed work for Genuine on a regular basis and for the purpose of this case is to be considered an employee of Genuine.
Hahn is properly joined in the action under Title VII as an agent of an employer. Bostick v. Rappleyea, 629 F.Supp. 1328, 1334 (N.D.N.Y.1985).

The Discrimination Issue
In June 1980, plaintiff terminated her relationship with an insurance brokerage firm in St. Louis and commenced employment with defendant Hahn. From June 1980 until she was discharged in June 1984, plaintiff worked at the direction of Hahn and did a variety of work duties for him, Genuine, Fortune and HBH.
During her employment, plaintiff accompanied Hahn on trips and assignments. He frequently gave public comment on her excellent work performance. He was substantially munificent in bestowing numerous gifts upon her. He frequently took her dining, provided her with expensive automobiles, and offered funds for a home loan. Her only job review was favorable to her, and she was never advised that her work performance was unsatisfactory. To the contrary, Hahn offered plaintiff a written employment contract and expressed to her promise of continuing employment.
Plaintiff initially was employed at a starting salary of $9,600 a year. That salary was increased to $10,500 in September 1981. Her salary was increased again in March 1982 to $11,550 a year. She received another increase in June 1982 to $12,480 per year, and in April 1983, her salary was increased to $14,430 which was paid through and including the date of her termination.
In September 1983 plaintiff married Russell Whites, and Hahn's attitude toward her changed markedly. Close friendship was no longer apparent. But it was after plaintiff's announced pregnancy in January 1984 that Hahn's actions give credence to the finding that the motivating fact in the decision to discharge plaintiff was her pregnancy.
He stopped speaking with her except when absolutely necessary, insulted her, cursed in her presence and generally was unpleasant to her. On June 22, 1984, Hahn advised plaintiff that he was terminating her employment.
The governing law in a case such as this is plentiful and consistent. In order to recover under Title VII, the plaintiff need only prove that her sex or pregnancy was a contributing factor in the employment decision to terminate her. 42 U.S.C. §§ 2000e-2(a), 2000e(k); Coleman v. Missouri Pacific Railroad, 622 F.2d 408, 410 (8th Cir. 1980); Meyers v. ITT Diversified Credit Corp., 527 F.Supp. 1064, 1069 (E.D.Mo. 1981). The facts adduced meet this burden.
Under Title VII, a claimant carries the initial burden of demonstrating a prima facie case of sex discrimination. The general factors necessary to prove a prima facie case are set forth in McDonnell *209 Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973):
1. The claimant belongs to a protected class.
2. The claimant was demonstrably capable of performing the duties of her position and was adequately performing.
3. The claimant, despite her qualifications, was discharged.
4. After the claimant was terminated, defendant employer continued to seek applicants for the same position with equal qualifications.
Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981); Teague v. City of St. Louis, 615 F.2d 773, 775 (8th Cir.), cert. denied, 449 U.S. 901, 101 S.Ct. 271, 66 L.Ed.2d 131 (1980). The same basic principles apply to discharge cases. Johnson v. Bunny Bread Co., 646 F.2d 1250, 1253 (8th Cir.1981); Osborne v. Cleland, 620 F.2d 195 (8th Cir.1980).
The Court concludes that the facts of the case previously indited establish plaintiff's prima facie case of sex discrimination under the McDonnell Douglas test.
Once the plaintiff has established a prima facie case of sex discrimination, the burden shifts to the defendants to articulate some legitimate, non-discriminatory reason for the termination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 254, 101 S.Ct. at 1094; McDonnell Douglas Corp. v. Green, 411 U.S. at 802, 93 S.Ct. at 1824.
But the Court finds from the credible evidence that defendants have failed to offer legitimate explanation for plaintiff's discharge and treatment. The reasons offered primarily poor job performancedo not ring true and are but a pretext for her termination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 255-56, 101 S.Ct. at 1094-95; McDonnell Douglas Corp. v. Green, 411 U.S. at 807, 93 S.Ct. at 1826-27; E.E.O.C. v. Financial Assurance, Inc., 624 F.Supp. at 692.
Thus, plaintiff prevails on her claim, as the Court concludes from the credible evidence that plaintiff's pregnancy was a substantial motivating factor in defendant's decision to discharge her. E.E.O.C. v. Financial Assurance, Inc., 624 F.Supp. at 691-92.

Relief
In view of the attitudes of the parties toward each other, reinstatement is inappropriate. See Spagnuolo v. Whirlpool Corp., 641 F.2d 1109, 1115 (4th Cir.), cert. denied, 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981); E.E.O.C. v. Financial Assurance, Inc., 624 F.Supp. at 692. And "front pay" in lieu of reinstatement will be denied, the Court holding the belief that its award makes plaintiff whole. E.E.O.C. v. Financial Assurance, Inc., 624 F.Supp. at 695.
As prevailing party, plaintiff is entitled to receive back pay based upon her salary at termination with interest from the date of her discharge to the date of this opinion. Stroh Container Co. v. Delphi Indus., 783 F.2d 743, 752 (8th Cir.1986); Behlar v. Smith, 719 F.2d 950, 954 (8th Cir.), cert. denied, 466 U.S. 958, 104 S.Ct. 2169, 80 L.Ed.2d 552 (1984); E.E.O.C. v. Financial Assurance, Inc., 624 F.Supp. at 694-95. This will include pay raises of 10% per annum that she could have reasonably expected, sick leave and medical benefits.[1]Rasimas v. Michigan Dept. of Mental Health, 714 F.2d 614, 626 (6th Cir.), cert. denied, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984); Catlett v. Mo. State Highway Comm., 627 F.Supp. 1015, 1018 (W.D.Mo.1985); Meyers v. I.T.T. Diversified Credit Corp., 527 F.Supp. 1064, 1070 (E.D.1981).
The Court finds no real basis for diminishing the award by plaintiff's alleged failure to mitigate her damages by making efforts to seek other employment. E.E.O. C. v. Financial Assurance, Inc., 624 F.Supp. at 693.
Plaintiff is entitled to award of attorney's fees and costs incurred and shall *210 within fifteen (15) days of this Order submit a bill of costs. A report relative to attorney's fees also shall be submitted for the Court's consideration, 42 U.S.C. § 2000e-5(k).
NOTES
[1] The Court declines to award plaintiff automobile expense.