Dortch, J.
Plaintiff brought an action against defendants in August 1991, alleging that defendants terminated her employment because of her handicap, sex and age in violation of G.L.c. 93, §§102 and 103, G.L.c. 151B, §4 and Amendment Article 114 of the Massachusetts Constitution. Defendants have now moved for summary judgment on the grounds that they are not employers within the meaning of G.L.c. 151B. Alternatively, the defendants argue that G.L.c. 15IB is an exclusive remedy so that summary judgment should be granted in their favor as to plaintiffs G.L.c. 93 and Massachusetts Constitution claims. In response to defendants’ motion, plaintiff moves for partial summary judgment seeking a declaration that defendant Executive Management Corporation (“EMC”) was her employer for jurisdictional purposes under G.L.c. 151B.
For the following reasons, defendants’ motion for summary judgment is allowed in part and denied in part and plaintiffs motion for partial summary judgment is denied.
FACTS
The undisputed material facts are as follows. Plaintiff Patricia Daigle (“Daigle”) began employment with defendant EMC as a secretary/office manager in 1976 on a part-time basis. Daigle became a full-time employee in 1988 and left the employ of EMC in April 1990. By that time, her duties included balancing the checkbooks of the various EMC companies, preparing the payroll tax reports and making tax deposits.
EMC is owned by defendant Arthur Alexander (“Alexander") and Leon Atamian ("Atamian”). Alexander was Daigle’s direct supervisor at EMC. Alexander and Atamian own ten companies in addition to EMC. One company is a Massachusetts corporation doing business in Maine; three companies are Delaware corporations doing business in Connecticut; one is a Maine corporation doing business in Maine; and one is a Delaware corporation doing business in Maine. Of the four remaining companies, two are incorporated in Delaware, one in New York and one, in addition to EMC, in Maine. Each of these four does business in Massachusetts.
Each company owned by Alexander and Atamian had its own management staff which was responsible for hiring and firing personnel and overseeing day-today operations. These daily operations, at the time of the alleged violations, included preparation of payroll to be sent to EMC, payment of wages and placement of orders. Each company had its own bank accounts.
EMC provided management and consulting services only to companies owned by Alexander and Atamian. The services provided by EMC included maintaining payroll records, cutting payroll checks, paying bills, assisting with advertising, central ordering and making payroll tax deposits. EMC also periodically took telephone messages for the companies it serviced. The companies had separate telephone systems. EMC did not prepare financial statements for the other companies.
EMC was reimbursed for its services. The fees paid to EMC were charged to each individual company’s account and the checks were signed by Alexander or Atamian. EMC had two full-time employees and one part-time employee in April 1990. EMC’s officers in 1990 were Arthur Alexander, president, Leon Atam-ian, treasurer and Kenneth Snitzer, clerk.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further) that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra 404 Mass, at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 297, 209 (1989).
I. “Employer” Within the Meaning of G.L.c. 151B.
In counts I and IV of plaintiffs complaint, it is alleged that defendant EMC was an employer within the meaning of G.L.c. 151B, §1(5). The statute states: “The term ‘employer’ does not include . . . any employer with fewer than six persons in his employ ...” G.L.c. 151B, §1(5).
*317 Defendant EMC had three employees at the time of the alleged discriminatory treatment. Defendants argue that EMC is not an “employer” within the meaning of G.L.c. 151B because it had fewer than the statutorily required minimum number of employees. Plaintiff argues that EMC and the other companies owned by Alexander and Atamian are so interrelated and centrally controlled that together they should be considered the functional equivalent of a “single employer.” See Whites v. Hahn, 699 F.Supp. 206, 207-08 (E.D. Mo. 1988), interpreting Title VII, 42 U.S.C. §2000e et seq., the federal analogue to G.L.c. 151B. Since these companies collectively employ more than twenty persons plaintiff argues that the jurisdictional test of G.L.c. 15IB is met.
Massachusetts courts have not yet addressed nor decided whether separate employers may be treated as a single entity under G.L.c. 151B. However, federal courts have adopted the “single employer” doctrine which allows plaintiffs to group interrelated companies together in order to meet the jurisdictional minimum number of employees for Title VII purposes. In so doing they have employed the following National Labor Relations Board test (NLRB Guidelines) as evidence of a “single employer”: interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control. Radio & Television Broadcast Technicians Local 1264 v. Broadcast Service of Mobile, Inc., 380 U.S. 225, (1965); Armbruster v. Quinn, 711 F.2d 1332, 1337-38 (6th Cir. 1983); Mas Marques v. Digital Equipment Corp., 637 F.2d 24, 27 (1st Cir. 1980).
The Massachusetts Supreme Judicial Court has stated that courts should look to cases that interpret Title VII “as an aid in interpreting (G.L.c.) 151B.” Harvard Law School Coalition for Civil Rights v. President & Fellows of Harvard College, 413 Mass. 66, 69 n.3 (1992). Therefore, this court will consider application of the NLRB Guidelines to the facts of this case to determine whether EMC and the other companies may be considered a “single employer.”
These four guidelines are not conclusive, but provide factors to aid in the determination of single-employer status. Armbruster, supra, 1337. Some federal courts have held that single employer status can be determined only when it is shown “that the separate existence of the two corporations was a sham.” Armbruster v. Quinn, 711 F.2d 1332 (1983); Fike v. Gold Kist, Inc., 514 F.2d 722, 725 (1981); Mas Marques, supra at 27. The courts have used the NLRB Guidelines to show that a separate corporate existence of two companies is a sham and that the corporations should be treated as a single employer. Fike, supra at 725.
An important requirement in determining the existence of a single employer “is that there be sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer.” Armbruster, supra at 1337. It must be shown by the evidence that the separate corporate entities are “highly integrated with respect to ownership and operations.” Fike, supra at 726.
The following is an evaluation of the intercorporate relationship among EMC and the other companies using the NLRB guidelines to determine if there is such a degree of interrelatedness that the separate entities must be considered a single employer subject to G.L.c. 151B. No one of the enumerated factors is controlling, but emphasis is placed on the first three as they tend to show operational integration. NLRB v. Welcome-American Fertilizer Co., 443 F.2d 19, 21 (9th Cir. 1971).
A. Interrelation of Operations
Factors which the NLRB has considered as indicia of interrelated operations include: “combined accounting records, bank accounts, lines of credit, payroll preparation, switchboards, telephone numbers, or offices,” Fike, supra, citing Western Union Corp., 224 NLRB 274 (1976) aff'd, 571 F.2d 665 (D.C. Cir. 1978), and significant interchange of employees, high-level supervisors or equipment. E.E.O.C. v. Wooster Brush Co., 727 F.2d 566 (1984); Fike, supra citing Council of Teamsters No. 42, 225 NLRB 209 (1976). The NLRB found that separate payrolls, telephones and billings and the fact that a corporation had no control over the hiring and firing of another corporation’s employees were more significant than common incorporators, (and) officers . . . and the fact that the two businesses shared a building, bookkeeping staff, equipment and employees. Fike, supra citing International Union of Operating Engineers, 169 NLRB 184 (1968). Reimbursement for services performed by one company for another demonstrates a lack of interrelation. Fike, supra at 726-27.
In this case, EMC and the other companies did not share facilities and did not exchange equipment or employees. Each company maintained separate bank accounts, telephone systems and offices. EMC had no control over the hiring and firing of the other companies’ employees. Although EMC kept payroll records and cut payroll checks for each of the other companies, the managers of the companies prepared the payroll and merely communicated their requirements to EMC. EMC was reimbursed by the other companies for this and other services it provided. The companies paid for EMC’s services with money from their individual corporate bank accounts.
These facts demonstrate that EMC and the other companies were not so interrelated as to be considered a single employer.
B. Common Management
The same persons managing and supervising different entities is evidence of common management. *318 Stockett v. Tolin, 791 F.Supp. 1536 (S.D. Fla. 1992). EMC and the other companies each employed their own day-to-day managers. EMC did not have control over the daily operations and management of any of the other companies, even though Arthur Alexander hired the managers for each of the companies.
EMC’s officers in 1990 were Alexander, Atamian and Kenneth Snitzer. Atamian is an officer of four of the other companies; Alexander is an officer of one of the other companies and Snitzer is an officer of three of the other companies. Although common officers is evidence of common management, some overlap of officials does not necessarily require a finding of common management. Fike, citing Western Union Corp., 224 NLRB 274, 92 LRRM 1443 (1976), aff'd, 571 F.2d 665 (D.C. Cir. 1978) (company and subsidiaries did not constitute a single employer). EMC shared one officer with four of the other companies and shared three officers with one other company.
In Western Union Corp., the company controlled the four subsidiaries’ budgets and selected the subsidiaries’ officers and directors, but there was no showing that the company exercised any control over labor relations and personnel policies of the subsidiaries, therefore, common management was not present. Western Union Corp., supra at 1446. In Frank N. Smith Associates, Inc., the NLRB found that where the same four persons held identical offices in each of the involved corporations, which were engaged in the same general line of business, each such corporation was a separate and independent entity. The NLRB considered the fact that each corporation had its own president and vice presidents with designated responsibilities. This precluded a finding of common management based on the existence of common directors. Frank N. Smith Associates, Inc., 194 NLRB 212, 78 LRRM 1603 (1971). The fact that the day-to-day management responsibilities and decisions were handled at a level far below the common officials and common directors was also evidence of separate entities. Western Union Corp., supra at 1446.
EMC and other companies had separate boards of directors and officer groups, with some overlap in each category. The day-today management decisions were handled by each individual company’s managers. From these facts, this court cannot find that common management control was exercised over EMC and the other companies.
C. Centralized Control of Labor Relations
The degree to which control of labor relations is centralized is the most critical of the four NLRB Guidelines. Odriozola v. Superior Cosmetics Distributors, Inc., 531 F.Supp. 1070, 1076 (P.R. 1982); Fike, supra at 727.
The managers of each individual company, in our case, hired all the employees for their particular company. Although Alexander and Atamian hired the managers for each company, neither Alexander, Atam-ian nor EMC was involved in the day-to-day labor practices. The “control” required to meet the test of centralized control of labor relations is “the actual and active control of day-to-day labor practices.” Fike, supra at 727. The control must extend into the area of personnel policies in order to be sufficient to establish a single employer. Fike, supra at 727, citing Carter v. Shop Rite Foods, Inc., 470 F.Supp. 1150 (N.D. Tex. 1979). The same persons making employment decisions for all entities is evidence of centralized control. Stockett, supra. EMC was not involved in the personnel decision making of the other companies. Managers of the other companies did not get approval from EMC (nor Alexander or Atamian) before hiring or firing employees and each manager prepared the payroll for his particular company. The fact that Alexander and Atamian hired the managers of the various companies is not sufficient to show that EMC had central control over the labor relations and practices of each company.
D. Common Ownership or Financial Control
The cases which have applied the common ownership standard to a set of facts require that one company own or have financial control over the other company. See Armbruster, supra; Fike, supra; Mas Marques, supra. In our case, since two individuals own a number of companies there is common ownership. Nevertheless, the corporate entity, EMC, does not own nor financially control any of the other corporate entities.
Alexander and Atamian are common owners of EMC and the other companies. Each of Alexander and Atamian’s companies had separate accounts for expenses and payroll. There is no evidence that EMC has ever exercised financial control over any of the other companies. The revenues from each company were placed in the company’s individual account and company operating expenses were paid from that account. Although Alexander and Atamian owned and exercised financial control over each company, EMC did not.
Plaintiff argues that because Alexander and Atamian are the sole owners of EMC and the other companies, common ownership is present. Where two individuals are the principal stockholders of two companies the federal court has found common ownership. Baker v. Stuart Broadcasting Co., 560 F.2d 389 (8th Cir. 1977); Whites v. Hahn, supra at 208. Nevertheless, the federal court places the least amount of emphasis on common ownership and financial control in its evaluation of a single employer. NLRB v. Welcome-American Fertilizer Co., supra at 21. “Common ownership is necessarily a feature of any conglomerate organization and ... is not determinative where common control is not shown.” United Telegraph Workers v. NLRB, 571 F.2d 665, 667 (D.C. Cir. 1978).
*319 The facts of this case have failed to show the existence of a single employer. The separate corporations are not so interrelated nor highly integrated with respect to ownership and operations to justify an aggrieved employee’s belief that any of the other corporations is jointly responsible for the acts of EMC.
II. G.L.c. 151B as an Exclusive Remedy.
In counts III, V and VI of the complaint, plaintiff alleges that defendants’ discriminatory treatment of her violates the Equal Rights Act, G.L.c. 93, §§102 and 103. Defendants argue that G.L.c. 151B provides plaintiff her exclusive remedy for claims of employment discrimination.
General Laws c. 151B expressly prohibits sex, age and handicap discrimination in the workplace and has established an elaborate procedure for pursuing employment discrimination claims. In addition, the statute states that “the procedure provided in (G.L.c. 151B) shall, while pending, be exclusive.” G.L.c. 151B, §9. Nevertheless, the Supreme Judicial Court has not decided whether G.L.c. 151B provides the exclusive remedy for all employment discrimination. See O’Connell v. Chasdi, 400 Mass. 686, 693 n.9 (1987); Convey v. Hill, 387 Mass. 11, 20 (1982). Since that court has not spoken on the issue, this court is less inclined to accept the arguments of defendants that it should be guided by lower courts’ holdings as to the exclusivity of G.L.c. 15IB when faced with claims under the Massachusetts Civil Rights Act, G.L.c. 12, §§11H and 111. More persuasive is the legislative history of the Equal Rights Act which shows that the Act was passed in response to the expectation that the United States Supreme Court would narrow the scope of the federal Civil Rights Act, 42 U.S.C. §§1986 and 1982, as applied to a federal employment discrimination case. M. Heins, Massachusetts Civil Rights Law, 76 Mass.L.Rev. 77, 86 (1991). Thus, the Equal Rights Act was intended to maintain for Massachusetts citizens the protections that the federal Civil Rights Act had afforded. In so doing it expanded the scope of Massachusetts civil rights law to reach wrongs not previously covered, including contract and property transactions involving private entities. See M. Heins, supra at 86.
When viewed in light of G.L.c. 15IB, the Equal Rights Act can be seen as a supplement to the administrative remedy which was once exclusive. While it has been said that claimants under the Massachusetts Civil Rights Act should not be permitted to “bypass the procedural prerequisites defined by the legislature in G.L.c. 15IB,”[2] the same should not hold true when G.L.c. 15 IB proves inadequate to address a plaintiffs needs. In the case at bar, plaintiff would be denied a remedy, not because she failed to comply with the procedural requirements of G.L.c. 151B, but because she worked for an employer with fewer than six employees. Therefore, this court rules that G.L.c. 151B is not the exclusive remedy for all employment related dis crimi-nation claims, so that plaintiff sclaimunderG.L.c. 93, §102 is not barred. Defendants’ motion for summary judgment as to countV is denied.
With respect to plaintiffs claims under G.L.c. 93, §103 as stated in counts III and VI of the complaint, a different result must obtain. While these are claims under the Equal Rights Act, they cannot be asserted by plaintiff because Section 103 was enacted subsequent to the termination of plaintiffs employment. Statutes dealing with substantive rights, rather than remedies or procedure, are not given retroactive effect in the absence of clear legislative intent. Lawton v. Commonwealth Gas Co., 400 Mass. 209, 212 (1987).
Although plaintiff argues that G.L.c. 93, §103 is procedural rather than substantive, the argument is without merit. For the same reason that Section 102 creates new state rights and remedies for sex discrimination above and beyond those conferred by G.L.c. 151B, Section 103, which serves the same purposes with regard to age and handicap discrimination, cannot be regarded merely as a procedural extension of G.L.c. 151B. Since there is no evidence of a legislative intent to confer retroactivity on this statute, it cannot apply to plaintiff. Therefore, defendants’ motion for summary judgment as to counts III and VI is granted.
As to plaintiffs claim in count II under the Massachusetts Constitution, Amendment Article 114, she is not precluded from seeking redress under the state constitution merely because handicap discrimination claims may now be brought under G.L.c. 151B and G.L.c. 93, §103. Again, while G.L.c. 15 IB may be the exclusive remedy in some contexts in which a plaintiff has the option to proceed under that statute, where a plaintiff is precluded from pursuing the more satisfactory remedy, she may still be entitled to the declaration sought in count II. For this reason, defendants’ motion for summary judgment as to this count is denied.
ORDER
Accordingly, defendants’ motion for summary judgment is ALLOWED as to counts I, III, IV and VI of the complaint and DENIED as to counts II and V. Plaintiffs motion for partial summary judgment is DENIED.

 Bergeson v. Franchi, 783 F.Supp. 713 (D.Mass. 1992).