Fecteau, J.
This case arises out of an action by Dan W. Hanke (“the plaintiff’), for termination from his position as a Senior Scientist/Study Director with Primedica Worcester, Inc. (“Primedica”) and Genzyme Transgenics Corporation (“GTC”) (collectively "the defendants”) in violation of G.L.c. 15 IB. The plaintiff alleges that Primedica unlawfully discriminated against him, based upon his age, when they terminated him from their employ. Additionally, the plaintiff alleges that GTC is liable to him for the discrimination as a joint employer with Primedica, or alternatively as the principle corporation to the subsidiary, Primedica, through which Primedica acted based on actual or apparent authority.
The defendants now move for summary judgment pursuant to Mass.R.Civ.P. 56, arguing that the plaintiff has no reasonable expectation of proving that he was doing his job acceptably, that he was replaced by a younger individual, or that the defendant’s adverse employment decision was motivated by a discriminatory animus. The defendants also argue that the plaintiff has no reasonable expectation of proving that GTC was his “employer” for the purposes of establishing liability under G.L.c. 151B, §4.
For the following reasons, the defendants’ motion for summary judgment is DENIED.
BACKGROUND
On February 6, 1995, the plaintiff began working at Primedica[1] as a Senior Scientist/Study Director in the Toxicology Department. At the time the plaintiff was hired he was 49 years old. Dr. Christina Gamba-Vitalo (“Dr. Gamba-Vitalo”), at that time GTC’s Associate Director of Toxicology, was primarily responsible for hiring the plaintiff. Dr. Michael Wyand (“Dr. Wyand”), Primedica's President, formally supervised *712 the plaintiff for the first few months of his employment, and he received additional, informal supervision from Dr. Gamba-Vitalo. Thereafter, the plaintiff was jointly supervised by Dr. Gamba-Vitalo, then the Director of Toxicology-Biologics, and Dr. Herman Lilja (“Dr. Lilja”), Director of Toxicology-Drugs.
The plaintiffs job responsibilities included: designing animal studies for testing of Primedica client’s products, preparation of detailed protocols of the studies, supervision of the staff carrying out the studies, making decisions regarding modifications to the studies, bearing full responsibility for the operation of the studies, implementation of proper laboratory techniques and practices, preparation of formal reports for clients and appropriate government agencies, and networking within the business community to develop new clients.
Shortly after the plaintiff joined Primedica, he met with Dr. Gamba-Vitalo and Dr. Wyand to discuss the first study he had handled, and his supervisors informed him that he needed to be more responsive to the study clients. Over the next several months Dr. Gamba-Vitalo had several discussions with the plaintiff about his job performance. In December 1995, she reprimanded the plaintiff for failing to become familiar with and follow Primedica’s standard operating procedures (“SOPs”) prior to beginning his studies. On March 29, 1996, Dr. Gamba-Vitalo issued a written memorandum to the plaintiff, documenting her concerns with the plaintiffs performance.[2] On June 10, 1996, the plaintiffs first formal performance evaluation was conducted. The plaintiff received a score of 260 out of 500. On July 31, 1996, Dr. Lilja and Dr. Gamba-Vitalo attended a meeting, where the plaintiff s performance was discussed, in the office of Melissa Puliafico, Primedica’s Director of Operations. The other participants in this meeting were Michael Gill, Primedica’s Chief Operating Officer and Janet Gorham of Primedica’s Human Resources Department. Carol Kline, GTC’s Director of Human Resources, participated in this meeting by telephone, and was consulted for her experience in similar human resources issues.
At this meeting, Dr. Lilja and Dr. Gamba-Vitalo expressed their concerns with regard to the plaintiffs performance. After exploring alternate positions for the plaintiff within the company, a consensus decision was made to terminate the plaintiffs employment. Carol Kline recommended that the plaintiff be given four month's of severance pay in connection with his termination.
On September 13, 1996, Dr. Lilja and Dr. Gamba-Vitalo met with the plaintiff and informed him of the termination of his employment with Primedica. Following the plaintiffs termination, Linda Chin, age 38, and Jennifer Glover, age 27, were transferred into the Toxicology Department as a Research Associate and a Study Coordinator, respectively.[3] Ultimately, Dr. Laura Andrews was hired as the plaintiffs replacement.
I. Summary judgment standard
Summary judgment is generally disfavored as a remedy in the context of discrimination cases which are based on disparate treatment. Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 439 (1995); Brunner v. Stone & Webster Eng’g Corp., 413 Mass. 698, 705 (1992). This is because the issue of discriminatory intent is a factual question. See Blare, supra at 439. “The ultimate question of the defendant’s state of mind is elusive and rarely is established by other than circumstantial evidence.” Id., citing Wheelock College v. Massachusetts Comm'n Against Discrimination, 371 Mass. 130, 137 (1976). Thus, the jury is required to “weigh the credibility of conflicting explanations of the adverse hiring decision.” Blare v. Husky Injection Molding Systems Boston, Inc., supra at 440.
Summary judgment is not, however, always inappropriate in discrimination cases. Rather, where the defendant’s motion for summary judgment demonstrates that “the plaintiffs evidence of intent, motive, or state of mind is insufficient to support a judgment in plaintiffs favor,” summary judgment should be upheld. Id.
In deciding motions for summary judgment, the Court may consider pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Mass.R.Civ.P. 56(c). The Court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility or find facts. See Community Nat’l Bank v. Dawes, 369 Mass. 550, 553-54 (1976); Mass.R.Civ.P. 56(c).
II. Three-part order of proof in discrimination cases
G.L.c. 151B, §4, provides in pertinent part: “It shall be an unlawful practice: . . . IB. For an employer in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.” G.L.c. 151B, §4. Section 1(8) of G.L.c. 151B provides that “(t]he term ‘age’ unless a different meaning clearly appears form the context, includes any duration of time since an individual’s birth of greater than forty years.” G.L.c. 151B, §1(8).
The three-part order of proof set forth by the United States Supreme Court under the Federal anti-discrimination provisions of Title VII are generally followed by the courts in Massachusetts when applying Massachusetts’ antidiscrimination statute. See Blare v. Husky Injection Molding Systems Boston, Inc., supra at 441, citing Wheelock College v. Massachusetts Comm’n Against Discrimination, supra at 134-36 *713 (citation omitted). In the first stage, the employee has the burden to show by a preponderance of the evidence a prima facie case of discrimination. See Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 116 (2000).
The plaintiff establishes the prima facie case by showing that, “(1) he is a member of a class protected by G.L.c. 151B; (2) he performed his job at an acceptable level; (3) he was terminated; and (4) his employer sought to fill the plaintiffs position by hiring another individual with qualifications similar to the plaintiffs.” Id. The elements of the plaintiff s initial burden in the first stage may vary in accordance with the specific facts of the case. See id.; Blare v. Husky Injection Molding Systems Boston, Inc., supra at 441; City of Boston v. Massachusetts Comm'n Against Discrimination, 47 Mass.App.Ct. 816, 821 (1999).
In the second stage, “the burden of production shifts to the employer to articulate a nondiscriminatory reason for the discharge, supported by credible evidence.” City of Boston v. Massachusetts Comm'n Against Discrimination, supra at 821. In this stage, if the employer fails to meet its burden, the presumption created by the evidence introduced supporting the prima facie case “entitles the plaintiff to judgment.” Abramian v. President & Fellows of Harvard College, supra at 117 (citation omitted). Likewise, if the employer meets its burden, the presumption drops from the case and the proceedings advance to the third stage. Id. However, “the burden of proof of unlawful discrimination rests at all times with the complainant.” Id. at 118, quoting Blare v. Husky Injection Molding Systems Boston, Inc., supra at 446.
In the third stage, the employee must demonstrate that the basis of the employer’s decision to discharge was unlawful discrimination. Id. The employee may accomplish this by showing that the reasons given by the employer for discharging him or her are untrue. Id. This showing by the employee gives rise to an inference that the plaintiff was a victim of unlawful discrimination. Abramian v. President & Fellows of Harvard College, supra at 118. The employer may counter this evidence by demonstrating that he had no discriminatory intent, even if his articulated reason was untrue, or that his action was based on another, nondiscriminatory reason. Id. If the plaintiff offers evidence sufficient to support a determination that the employer’s reason was a pretext, or that the actual reason for his discharge was discrimination, then summary judgment for the defendant is inappropriate. Blare v. Husky Injection Molding Systems Boston, Inc., supra at 445.
In this case, the plaintiff alleges that the defendants terminated him from their employ, not based upon any deficiencies in his performance, but rather because of his age. In meeting the prima facie case for employment discrimination the plaintiff has shown that he is a member of the class protected by G.L.c. 151B, that he was terminated, and that the individual hired to replace him has similar qualifications and is younger than he is.
However, the element that is at the heart of the dispute, and critical to establishing the prima facie case, is whether or not the plaintiff performed his job at an acceptable level. The defendants’ position is supported by the testimony of Dr. Gamba-Vítalo regarding the deficiencies in the performance of the plaintiff that she observed and documented in her capacity as the plaintiffs supervisor. The plaintiff, however, argues that he received no indication from his clients that he was performing at an unsatisfactory level, nor was he subject to criticism by anyone other than Dr. Gamba-Vitalo, in the performance of his job duties. Furthermore, several colleagues and clients of the plaintiff submitted letters of commendation for the plaintiffs work as a Study Director/Senior Scientist at Primedica to the Massachusetts Commission Against Discrimination (MCAD). These letters expressed to the MCAD that the plaintiff carried out his duties effectively, and many were surprised to learn of the circumstances of his termination.
Although the moving party has presented a rather strong case of unsatisfactory performance which would appear, on paper at least, to outweigh the plaintiff s claim to the opposite, credibility of evidence is not a proper consideration at this stage of the proceedings. Upon consideration of the Rule 56 record, this court cannot state, as a matter of law, that the plaintiff will be unable to present support for such a claim before the fact finder. As such, there exists a genuine issue of material fact regarding the plaintiffs performance of his job duties which must be resolved by the trier of fact.
III. Joint Employer — GTC and Primedica
Where two parties share control over an individual’s employment they will be held jointly and severally liable for violations under G.L.c. 151B. See Stanley v. Gillette Co., 2 Mass. Discrimin. L. Rep. 1203, 1205 (1980) (citations omitted); Winsmann v. Choate Health Management, Inc., Civil No. 976561 (Super.Ct. May 29, 1998) (8 Mass. L. Rptr. 480). While the Massachusetts courts have not extensively addressed whether separate employers may be treated as a single employer under G.L.c. 151B, federal courts have adopted the “single employer” doctrine, and employed National Labor Relations Board (NLRB) Guidelines to set forth evidence of a “single employer.” See Daigle v. Alexander, Civ. No. 915588 (Super. Ct. Nov. 5, 1993) (1 Mass. L. Rptr. 315).[4] “An important requirement in determining the existence of a single employer ‘is that there be sufficient indicia of an interrelationsip between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer.’ ’’ *714 Daigle v. Alexander, supra, quoting Ambruster v. Quinn, 711 F.2d 1332, 1337 (1983).
While the only evidence presented indicating GTC’s involvement in the employment decisions regarding the plaintiff is that Carol Kline was contacted by phone during the meeting where the plaintiffs termination was discussed,[5] a finding that the GTC possessed sufficient indica of control over Primedica to be considered a joint employer of the plaintiff is essentially a factual issue. See Boire v. Greyhound Corp., 376 U.S. 473, 481 (1964); Winsmann v. Choate Health Management, Inc., supra. Thus, this determination is also inappropriate at this stage in the proceedings.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion for summary judgment be DENIED.

 Formerly known as Mason Laboratories. Primedica provides pre-clinical drug discovery and development services to the biopharmaceutical industry. This means that Primedica tests drugs and chemicals on animals (i.e., rats, dogs, and monkeys) to assess the safety of the drugs or chemicals before they are approved for human use in pharmaceutical or cosmetic products. During the course of the plaintiffs employment, Primedica was a wholly-owned subsidiary of GTC.

 These items included: notifying his supervisor of absences in a timely fashion; proper transfer of studies during prolonged absences; initiating direct contact with staff and assisting junior staff; updating clients in writing or on the phone on a weekly basis; making necessary changes to the study protocols without delegating the task; making all necessary contacts with the client without delegating this responsibility; not allowing clients or consultants to move through the building unescorted or escorted only by junior staff; attending client lunches when requested; submitting all reports and protocols to supervisor before sending them out; and developing collegial spirit with staff.

 Research Associates are three employment grades below that of the plaintiff; and Study Coordinators are four grades below that of the plaintiff. Additionally, neither of the positions require a doctoral degree, as required of all Senior Scientists, thus neither of these employees could be considered replacements for the plaintiff.

 This evidence includes: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. Radio & Television Broadcast Technicians Local 1264 v. Broadcast Service of Mobile, Inc., 380 U.S. 255 (1965); Mas Marques v. Digital Equipment Corp., 637 F.2d 24, 27 (1st Cir. 1980).

 The plaintiff also submits TSI Corporation’s 1993 Annual Report and argues that this report “presents evidence of a tight control that was directly exercised over the daily and internal operations of Primedica by its corporate parent.”